## BANK OF BOSTON CONNECTICUT *v.* RICHARD SCHLESINGER ET AL.
### (14270)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued June 4—decision released August 13, 1991

*James R. Fogarty,* with whom, on the brief, was *Carolyn W. Alexander,* for the appellants (defendants).

*Anthony M. Fitzgerald,* with whom, on the brief, were *William P. Yelenak* and *Susan S. Chambers,* for the appellee (plaintiff).

BORDEN, J. This is a suit on a personal guaranty of promissory notes. This appeal arises out of the granting of a prejudgment attachment in favor of the plaintiff, Bank of Boston Connecticut,[1] that imposed a lien on certain partnership interests of the defendants, Richard Schlesinger and William Weinstein. The issues are whether the trial court improperly: (1) granted the prejudgment attachment on the defendants' partnership interests rather than on the Waterbury Industrial Commons, the property that secured the notes (the property); (2) admitted into evidence expert testimony (a) about environmental issues offered by an attorney

---

[1] The plaintiff has acquired the interests of the Colonial Bank, with which the defendants dealt in the underlying commercial transactions involved in this appeal. For the purpose of clarity, we shall simply refer to the "plaintiff" throughout the opinion.

from the law firm representing the plaintiff, and (b) concerning the "liquidation value" of the property; and (3) denied the defendants' motion to stay the prejudgment attachment action pursuant to General Statutes §§ 49-28 and 49-1.[2] We affirm.

The relevant facts of this appeal are undisputed. The defendants are the sole partners in Mark David Associates. In 1985, Mark David Associates purchased the property from the city of Waterbury and the Naugatuck Valley Development Corporation. Because of potential environmental problems with the property, Mark David Associates received from the city of Waterbury and the Naugatuck Valley Development Corporation an indemnification agreement for any liability that might arise for cleaning up the property. This environmental indemnification agreement runs in favor of both Mark David Associates and the plaintiff. Mark David Associates financed the purchase by giving a first mortgage to the plaintiff in July, 1985, in the face amount of $3.9 million, and a second mortgage in November, 1986, in the face amount of $3.1 million.[3]

---

[2] The defendants also raised two additional claims. First, they claimed that the trial court improperly granted temporary injunctive relief in connection with the prejudgment attachment. At oral argument, however, the defendants conceded that this claim is not reviewable because the granting of a temporary injunction does not ordinarily constitute a final judgment for purposes of appeal. *Doublewal Corporation* v. *Toffolon,* 195 Conn. 384, 389, 488 A.2d 444 (1985).

Second, the defendants claimed that the plaintiff should have been estopped from introducing evidence as to the potential environmental liability that it could incur by foreclosing on the property. The trial court, in its memorandum of decision, however, did not refer to such a claim of estoppel. It is the responsibility of the appellant to seek an articulation of the trial court's decision in order to provide this court with an adequate record for review. *O'Hara* v. *State,* 218 Conn. 628, 635, 590 A.2d 948 (1991); see also Practice Book § 4051. The defendants have failed to do so and, therefore, we decline to review this claim.

[3] It is undisputed that, although the initial total amount of the mortgages was $7 million, the current debt of the defendants to the plaintiff totals approximately $6.1 million.

At the closing for the second mortgage, the defendants executed a limited guaranty and indemnity agreement personally guarantying both the first and second mortgages.

The agreement provides, in pertinent part, that: "1. The undersigned, Richard Schlesinger and William Weinstein, jointly and severally, hereby unconditionally and absolutely guarant[y] the prompt payment of the Notes and all monies coming due thereunder or under the Mortgages or any other related documents to include, without limitation, each payment of interest and/or additional interest and/or principal coming due under the Notes, costs of collection and attorneys' fees as provided in the Notes (herein the 'Liabilities'). Notwithstanding the foregoing it is understood and agreed that the obligation of the undersigned as to the principal amount due under the Notes (Principal Loan Balance) shall be limited to an amount calculated as follows: Principal Loan Balance × 1 – [Net Operating Income] ÷ [1.2 × Debt Service] = Guaranteed Principal Amount . . . . 3. Upon any default of Borrower under the Notes, Bank may enforce this guarant[y] immediately against any or all of the undersigned without the necessity of any suit or action against Borrower or any other party liable with respect to the Liabilities and without resorting to and without regard to any collateral for the Liabilities or any other guaranty thereof or source of payment therefor."

In December, 1989, the notes were in default and the plaintiff exercised its right to accelerate the principal.[4] In January, 1990, the plaintiff instituted this action against the defendants based upon the personal guaranty that they had executed. The plaintiff moved for prejudgment attachments in the amount of $2.7 mil-

---

[4] The defendants do not dispute that they are in default on the notes, or that the plaintiff had the right to bring an action against them.

lion on the interests of the defendants in nine partnerships. In May, 1990, the plaintiff prepared certain papers, including an unsigned foreclosure complaint on the property, but it never returned the writ and complaint to court. The defendants moved for a stay of the prejudgment attachment proceedings based upon the purported initiation of foreclosure proceedings. The trial court denied the defendants' motion.

The trial court granted an attachment in the amount of $1.5 million on the interests of the defendants in five partnerships. The court did not explain how it had calculated this sum, and the defendants did not file a motion to articulate this finding. The defendants now appeal from the prejudgment attachment order. General Statutes § 52-278*l*.

I

We first consider our scope of review. Pursuant to our prejudgment remedy statutes; General Statutes § 52-278a et seq.; the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. *New England Land Co.* v. *DeMarkey*, 213 Conn. 612, 620–21, 569 A.2d 1098 (1990). "The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities." Id., 620. Moreover, this weighing process applies to both legal and factual issues. *Augeri* v. *C. F. Wooding Co.*, 173 Conn 426, 429, 378 A.2d 538 (1977); *Babiarz* v. *Hartford Special, Inc.*, 2 Conn. App. 388, 393, 480 A.2d 561 (1984).

We reiterate "the limited role that our case law assigns to appellate review of a trial court's broad dis-

cretion to deny or to grant a prejudgment remedy. It is the trial court that must determine, in light of its assessment of the legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim. We decide only whether the determination of the trial court constituted clear error." *Greenberg, Rhein & Margolis, Inc.* v. *Norris-Faye Horton Enterprises, Inc.,* 218 Conn. 162, 166, 588 A.2d 185 (1991); see also *Dow & Condon, Inc.* v. *Anderson,* 203 Conn. 475, 479–80, 525 A.2d 935 (1987); *Solomon* v. *Aberman,* 196 Conn. 359, 364, 493 A.2d 193 (1985).

## II

The defendants first claim that the trial court improperly granted the plaintiff's prejudgment attachment on the partnership interests because the plaintiff was adequately secured by the mortgaged property. The defendants do not dispute the validity of the guaranty and indemnity agreement, or that the plaintiff was entitled to bring an action under the agreement rather than to foreclose on the mortgage. The defendants' argument, presented without the benefit of supporting authority, is that because the value of the collateral accompanying the notes is greater than the debt, the plaintiff should have been equitably precluded from exercising its contractual right, pursuant to the guaranty and indemnity agreement, to pursue, by way of attachment, other security for the notes.[5] The plaintiff argues, to the contrary, that because the guaranty and indemnity agreement permits a cause of action separate and independent from the mortgages executed

---

[5] More specifically, the defendants argue that: (1) because their liability under the guaranty and indemnity agreement is less than the underlying debt secured by the two mortgages because of the formula, "if one assumes that the mortgages are sufficient collateral, then the Plaintiff has no need for additional collateral"; and (2) "the Plaintiff's own recent business records indicate that it is adequately secured [by the property]."

by Mark David Associates, it was not required to proceed first against Mark David Associates and the property, regardless of the value of that property as security for the notes. We agree with the plaintiff.

The trial court concluded that probable cause existed to attach the sum of $2.5 million dollars of the defendants' partnership interests in order to "secure the collection guarant[y] signed by [the defendants.]" The court limited the amount of the attachment to $1.5 million, however, because it concluded that the defendants, as guarantors, "may be entitled to a credit for monies realized upon foreclosure." Implicit in the court's decision is the determination that, pursuant to the guaranty and indemnity agreement, the plaintiff was not legally required to exhaust the collateral securing the loan prior to resorting to other assets by way of attachment. It is also clear from the court's decision that, in arriving at its conclusion, it considered the possibility of the plaintiff's obtaining some value from the mortgaged property.

"Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* 203 Conn. 123, 131, 523 A.2d 1266 (1987). The language of the guaranty and indemnity agreement explicitly provides that the plaintiff has the right to enforce the guaranty "without resorting to and without regard to any collateral for the [l]iabilities . . . ." Whether the collateral securing the mortgage was sufficient to cover the amount of the debt was irrelevant with respect to the enforceability of the guaranty because the plaintiff had the right pursuant to the agreement to pursue different sources of security, namely, the partnership interests of the defendants. Since the trial court's granting of the attachment on the defendants' partnership interests was supported

by the guaranty, under the facts of this case, the trial court made no clear error of law and did not clearly abuse its discretion.

The defendants are effectively requesting that we rewrite their commercially sophisticated guaranty and indemnity agreement to require the plaintiff to exhaust the collateral securing the notes before pursuing its available remedy under the agreement. The parties could have written such an agreement, but they did not do so. "It is not within the power of courts to create new and different agreements." *Jay Realty, Inc.* v. *Ahearn Development Corporation,* 189 Conn. 52, 55, 453 A.2d 771 (1983).

## III

The defendants next claim that the trial court improperly admitted into evidence: (1) expert testimony as to the "liquidation value"[6] of the property; and (2) expert testimony of an attorney from the law firm of the plaintiff's counsel concerning environmental issues surrounding the property. We disagree.

In challenging the evidentiary rulings of the trial court on a prejudgment attachment, the defendants must establish not only that the admission was clear error, but also that the error was harmful. *Sanderson* v. *Steve Snyder Enterprises, Inc.,* 196 Conn. 134, 142, 491 A.2d 389 (1985). In Part II of this opinion, we decided that the trial court need not have considered the value of the property at all because the plaintiff was contractually entitled to pursue other assets under the express terms of the guaranty and indemnity agreement. Therefore, even assuming clear error in the admission of the challenged evidence, the defendants could not have been harmed because the evidence was

---

[6] Edward Heberger, the plaintiff's appraiser, testified that "liquidation value [as opposed to fair market value] presumes a quick sale, a sale under duress."

related only to the value of the property, a consideration that was irrelevant to the determination of whether an attachment should have been granted.

## IV

The defendants' final claim is that because the plaintiff had initiated a foreclosure action, the trial court improperly failed to stay the attachment pursuant to General Statutes §§ 49-1 and 49-28.[7] We disagree.

In May, 1990, the plaintiff purported to begin foreclosure proceedings on the property by bringing an

---

[7] General Statutes § 49-1 provides: "WHEN FORECLOSURE A BAR TO FURTHER ACTION ON DEBT. The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclosure; but the foreclosure is not a bar to any further action upon the mortgage debt, note or obligation as to any person liable for the payment thereof upon whom service of process to constitute an action in personam could not have been made within this state at the commencement of the foreclosure. The judgment in each such case shall state the names of all persons upon whom service of process has been made as herein provided."

General Statutes § 49-28 provides: "WHEN PROCEEDS OF SALE WILL NOT PAY IN FULL. If the proceeds of the sale are not sufficient to pay in full the amount secured by any mortgage or lien thereby foreclosed, the deficiency shall be determined, and thereupon judgment may be rendered in the cause for the deficiency against any party liable to pay the same who is a party to the cause and has been served with process or has appeared therein, and all persons liable to pay the debt secured by the mortgage or lien may be made parties; but all other proceedings for the collection of the debt shall be stayed during the pendency of the foreclosure suit, and, if a deficiency judgment is finally rendered therein, the other proceedings shall forthwith abate. If the property has sold for less than the appraisal provided for in section 49-25, no judgment shall be rendered in the suit or in any other for the unpaid portion of the debt or debts of the party or parties upon whose motion the sale was ordered, nor shall the same be collected by any other means than from the proceeds of the sale until one-half of the difference between the appraised value and the selling price has been credited upon the debt or debts as of the date of sale; and, when there are two or more debts to which it is to be applied, it shall be apportioned between them."

unsigned foreclosure writ, summons, complaint, lis pendens, application for temporary injunction, bond, and order to show cause to the Waterbury Superior Court. Although Mark David Associates was later served with the papers, the plaintiff did not prosecute the show cause hearing and the unsigned foreclosure writ, summons, and complaint, which were made returnable to the court on June 26, 1990, were never returned to the court. During the hearing on the prejudgment attachment, the defendants moved to stay this case and, thereby, the attachment sought by the plaintiff. The trial court denied their motion.

The defendants claim that the following language in § 49-28 supports their argument that the trial court should have stayed the proceedings: "If the proceeds of the sale are not sufficient to pay in full the amount secured by any mortgage or lien thereby foreclosed, the deficiency shall be determined, and thereupon judgment may be rendered in the cause for the deficiency against any party liable to pay the same who is a party to the cause and has been served with process or has appeared therein, and all persons liable to pay the debt secured by the mortgage or lien may be made parties; *but all other proceedings for the collection of the debt shall be stayed during the pendency of the foreclosure suit,* and, if a deficiency judgment is finally rendered therein, the other proceedings shall forthwith abate." (Emphasis added.)

A review of the plain language of the statute as applied to the facts of this case, however, defeats the defendants' argument. It is not disputed that the foreclosure action was not returned to court. Section 49-28 provides for a stay of "all other proceedings for the collection of the debt" only "during the pendency *of the foreclosure suit.*" (Emphasis added.) A suit is pending from the time that it is returned to the court because only then does it pass beyond the physical con-

162

trol of the litigants. See *Demar* v. *Open Space & Conservation Commission,* 211 Conn. 416, 430, 559 A.2d 1103 (1989); see also *Algonquin Gas Transmission Co.* v. *Becker,* 25 Conn. Sup. 448, 450, 206 A.2d 846 (1952). The same reasoning disposes of the defendants' claim under § 49-1, which posits a "foreclosure of a mortgage" as a "bar to any further action upon the mortgage debt . . . ." Because the plaintiff never returned the writ to court, there was no foreclosure action pending at the time of this action, and thus no foreclosure of the mortgage in question. The trial court properly denied the motion to stay.

The judgment is affirmed.

In this opinion the other justices concurred.