[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO CONFIRM ARBITRATION AWARD AND MOTION TO VACATE ARBITRATION AWARD
The plaintiff brought this action pursuant to section 52-418 of the General Statutes to vacate an arbitration award denying coverage under an uninsured motorist provision of an automobile insurance policy issued by the defendant, Peerless Insurance Company. The defendant has filed a motion to confirm the arbitration award pursuant to section 52-417 of the General Statutes. The arbitrators' award dated June 7, 1991, concluded that there was no coverage under the defendant's policy number 43P7479114 for the uninsured motorist's claim of the Estate of Joan Jowdy arising out of a motor vehicle accident on October 16, 1988. CT Page 8371
Except for the coverage question, most of the basic facts are undisputed. In October, 1985, a 1985 Volkswagen Quantum automobile was purchased by the Jowdy family and registered in the name of Mary Beth Jowdy, the daughter of the decedent. On October 8, 1985, Joan Jowdy went to her insurance agent, Emil Curran, at Johnson-Stevens-Curran Agency to procure insurance for the vehicle. Since Mary Beth Jowdy was the owner of the car, she was the named insured under the policy. Joan Jowdy indicated to Curran that she would be the primary driver of the Volkswagen rather than her daughter, even though the car was registered in her daughter's name. Mary Beth Jowdy drove a separate vehicle, and resided at the family home on 4 Wooster Heights Road in Danbury on October 8, 1985. Peerless issued the disputed policy which designated Mary Beth Jowdy as the named insured and both Mary Beth and Joan as drivers. No change was made in the designation of the insured under the policy, although Mary Beth Jowdy moved to Southington in August, 1987 after she got married. No one in the Jowdy family notified Curran or Peerless that Mary Beth had left the family residence in Danbury or questioned whether that would affect rights under the insurance policy.
On October 16, 1988, Joan Jowdy was killed while riding as a passenger in another family automobile which was owned by her and driven by her husband, Edward Jowdy. That car, a 1985 Cadillac, was covered under another Peerless policy which insured three vehicles and provided $300,000.00 coverage. The cause of Joan Jowdy's death was the negligent operation of an automobile by an uninsured motorist, Michael Shetz. After exhausting the coverage on the policy covering the Cadillac, the plaintiff, Taryn DiBuono, the daughter of Joan Jowdy and Administratrix of her estate, demanded arbitration under the uninsured motorist coverage provision of the policy on the Volkswagen pursuant to section 38-175c now section 38a-336 of the General Statutes. After a hearing before the arbitrators, they made the following findings:
On October 16, 1988, the decedent's daughter, Mary Beth Jowdy, rather than the decedent, was the named insured under the automobile liability insurance policy issued by Peerless. On October 16, 1988, Joan Jowdy was not "an insured" under the policy since she was neither a resident, relative nor a spouse of the named insured, Mary Beth Jowdy, who had moved out of her mother's house in August, 1987. The arbitrators found: (1) there was no coverage under the policy for the uninsured motorist's claim of the estate; (2) reformation of the insurance policy was not warranted under the facts of the case; and (3) the doctrine of estoppel did CT Page 8372 not apply.
The insurance policy in question provided that the insurer would pay damages "which an `insured' is legally entitled to recover from the owner or operator of an `uninsured motor vehicle' because of `bodily injury.'" The policy defines "insured" as follows: (1) the named insured or any family member; (2) any other person occupying the covered vehicle; and (3) any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies, sustained by a person described in subsections (1) or (2).
The plaintiff made claims three grounds for recovery from the defendant insurer: (1) the plaintiff's decedent is an actual insured under the insurance policy; (2) the policy should be reformed to conform to the intent of the decedent and the insurer's agent that the decedent be insured under the policy; and (3) the insurer should be estopped from denying that the decedent was to be given coverage as a named insured. The same claims were made to the arbitrators and rejected by them.
Section 52-418 of the General Statutes allows the Superior Court to vacate an arbitration award if any one of four specified defects exist. However, the factors allowing an arbitration award to be vacated under the statute are not exhaustive and do not limit the scope of judicial review of arbitration awards in all instances. Stratford v. Local 134, IFPTE, 201 Conn. 577, 583. The authority of the court in reviewing an arbitration award is confined to the issues submitted. Daley v. Hartford, 215 Conn. 14, 24. When an insurance policy contains a binding arbitration provision in accordance with section 38-175c of the General Statutes, the arbitration panel determines all issues as to coverage under the policy. Wilson v. Security Ins. Group, 199 Conn. 618,623; Oliva v. Aetna Casualty Surety Co., 181 Conn. 37,41, 42. A dispute whether a claimant should receive payment under an uninsured motorist provision in an insurance policy is a question of coverage which must be submitted to arbitration. Lane v. Aetna Casualty Surety Co.,203 Conn. 258, 263, 264; Oliva v. Aetna Casualty Surety Co., supra, 41. In Quinn v. Middlesex Ins. Company, 16 Conn. App. 209,212, 213, it was held that whether a plaintiff was entitled to uninsured motorist benefits under a relative's insurance policy when operating his own car was a coverage question which must be submitted to arbitration. Where, as here, the parties are involved in compulsory arbitration as a result of a statute, there is a broader scope of judicial review of arbitration awards than with voluntary arbitration CT Page 8373 based upon a contract between the parties. With compulsory arbitration, the court engages in de novo judicial review of the legal questions regarding coverage issues even though the same issues were decided by the arbitrators. Mendes v. Automobile Ins. Co. of Hartford, 212 Conn. 652, 656; American Universal Ins. Co. v. DelGreco, 205 Conn. 178,189. The plaintiff's claims of a right to reformation of the contract and estoppel are essentially legal questions which must be redetermined by the court. On the other hand, the question of coverage under the policy, in this case whether the decedent can be considered a named insured, is a question of fact. With such issues, the "appropriate standard of review is the `substantial evidence' test that prevails in review of factual determinations by administrative agencies. . . ." Chmielewski v. Aetna Casualty Surety Co.,218 Conn. 646, 656.
Where the court engages in such review, the question is whether there is substantial evidence in the administrative record to support the agency's findings of fact and whether the conclusions drawn from those facts are reasonable. Connecticut Light Power Co. v. Department of Public Utility Control, 216 Conn. 627, 639. "`Substantial evidence' exists if the administrative record affords `a substantial basis of fact from which the fact in issue can reasonably be inferred.'" Id., 639, 640. The substantial evidence rule requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from the evidence is one of fact for the jury. Lawrence v. Kozlowski, 171 Conn. 705,713. Reversal of the agency's decision is allowed only if the conclusion reached was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Id.; Persico v. Maher, 191 Conn. 384, 409.
A motion to vacate, modify or correct an arbitration award can only be made within thirty days from the notice of the award to the party to the arbitration who makes the motion. Section 52-420(b) of the General Statutes. While the arbitrators made their award on June 7, 1991, the plaintiff's application was not filed until July 18, 1991. However, the award was not mailed to the plaintiff until June 26, 1991, and the application to vacate the award was filed within thirty days of that date.
The terms of an insurance policy ought to be construed according to the general rules of contract interpretation. Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 512. If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to CT Page 8374 be determined, must be given its natural and ordinary meaning. Id., 512, 513. "`Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law.'" Bank of Boston Connecticut v. Schlesinger,220 Conn. 152, 158. The courts cannot create new and different agreements for the parties. Id., 159; Jay Realty, Inc. v. Ahearn Development Corporation, 189 Conn. 52, 55. The decedent was covered as an insured under the policy as long as her daughter lived in the same household, because the definition of insured included any family member related to the insured who is a resident of the named insured's household. The evidence before the arbitrators clearly supported their conclusion that the decedent and her daughter were no longer members of the same household after August, 1987 and that Joan Jowdy was not an insured under the policy on October 16, 1988, since she was neither a resident, relative nor a spouse of the named insured at that time. While the decision of the arbitrators is supported by substantial evidence, even if the court engaged in an independent review of the question, the decedent was clearly not an insured under the policy on the date of the accident.
The plaintiff claims that the insurance policy issued by Peerless should be reformed to make the decedent the named insured because it was understood by the defendant's agent that the decedent would be the primary driver of the car. The standard of proof for reformation of contracts is clear, substantial and convincing evidence. Lopinto v. Haines,185 Conn. 527, 534. "A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as a result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other. [Citations omitted.]
A court in the exercise of its power to reform a contract must act with the utmost caution and can only grant the relief requested if the prayer for reformation is supported by convincing evidence. Palmer v. Hartford Fire Ins. Co., 54 Conn. 488, 500, 501, 9 A. 248. In the absence of fraud, it must be established that both parties agreed to something different from what is expressed in writing, and the proof on this point should be clear so as to leave no room for doubt. Bishop v. Clay Fire Marine Ins. Co.,49 Conn. 167, 172. If the right to reformation is grounded solely on mistake, it is required that the mistake be mutual, and to prevail in such a case, it must appear that the CT Page 8375 writing, as reformed, will express what was understood and agreed to by both parties. Hoffman v. Fidelity Casualty Co., 125 Conn. 440, 444, 6 A.2d 357; Milford Yacht Realty Co. v. Milford Yacht Club, Inc., 136 Conn. 544, 548. . . ." Greenwich Contracting Co. v. Bonwit Construction Co.,156 Conn. 123, 126, 127.
The plaintiff concedes that no Connecticut case has held that an automobile insurance policy can be reformed by substituting for the named insured a person intended to be insured by the party requesting insurance coverage. Considering the reluctance of our courts as shown by some of the cases previously cited to reform insurance contracts, this court believes that such changes in the law should be made by our Supreme Court or the Legislature. Moreover, it is not appropriate under the facts of this case. While the knowledge of an insurance agent, acquired while he was acting within the scope of his authority is imputed to the insurance company, Back v. Peoples National Fire Ins. Co., 97 Conn. 336,340, the information given to the agent must still be sufficient to establish one of the grounds for reformation of the insurance contract. Even if the decedent was mistaken as to the insurance coverage, there is no evidence of any fraud or inequitable contract on the part of Curran or Peerless. Curran was informed that Mary Beth owned the car but that Joan would be the primary driver and drafted the insurance application accordingly. Since Mary Beth was the owner, Peerless would only issue the policy with her as the named insured. There was no mutual mistake on the part of Joan Jowdy and Curran. Despite indirect coverage for Joan while she and Mary Beth resided at the same address, Curran apparently charged the rate for a single insured under the policy. The coverage requested was provided until Mary Beth changed her residence in August, 1987, but Curran was never informed of that change. The loss and coverage occurred not because of any change in the policy, but because of a change in the circumstances of the insured, which was never communicated to Curran or Peerless. While the decedent presumably did not know that her daughter's change of residence was important as to policy coverage, she benefited by the lower rate that was charged for the policy. The plaintiff has not proven by clear and convincing evidence that there was a mutual mistake of fact at the time the policy was issued. The policy was written based upon the information supplied by the decedent, and it provided coverage based upon the condition that her daughter reside in the same household. The court cannot rewrite the contract between the parties. Bank of Boston Connecticut v. Schlesinger, supra, 159; Foley v. Southport Manor Convalescent Center, Inc., 11 Conn. App. 530, 538. CT Page 8376
The plaintiff also cannot recover on her claim of estoppel. Under Connecticut law, "`estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . .'" Brown v. Employer's Reinsurance Corporation, 206 Conn. 668, 677; Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 699. The plaintiff concedes that a majority of jurisdictions agree that an estoppel theory is not available to broaden the coverage of an insurance policy to protect an insured against risks not included or expressly excluded from it, based in part on the concept that an insurance company should not be required by waiver or estoppel to pay a loss for which it charged no premium. 1 A.L.R.3d 1139, 1144. There is no evidence here that either Peerless or its agent, Curran, made any misleading statements to the decedent to induce her to believe that she was covered under the policy at any time when it knew that she was not covered by its provisions. It is undisputed that Curran did not have knowledge of Mary Beth Jowdy's change of residence in October, 1988, and there was no mistake in issuing the policy initially with Mary Beth Jowdy as the named insured since she owned the car and was the insurance applicant. The necessary basis for an estoppel claim does not exist in this case.
The decision of the arbitrators was legally and factually correct. The motion to vacate the arbitration award is denied. The motion to confirm the arbitration award is granted.
ROBERT A. FULLER, JUDGE