[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes before the court on an application to attach the property of the defendant, Connecticut Shellfish Co., upon a claim that the defendant has failed to pay a bill for the repair of one of its trucks by the plaintiff, New England Truck Sales and Service.
Though the court ruled from the bench, this memorandum has been prepared to provide a more complete statement of the court's analysis and to remedy the deficiencies of transcription.
The defendant opposed the application on the grounds that 1) the plaintiff failed to comply with General Statutes § 14-65f, and 2) the repairs to which the plaintiff's claim applies were necessitated by the plaintiff's failure to perform prior repairs in accordance with the standard of care and that it was therefore not entitled to payment.
The court must determine whether there is probable cause that the plaintiff will prevail on the merits, taking into consideration the defendant's potential defenses and counterclaims and weighing the probabilities of success as to both legal and factual issues.Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 156
(1991).
The facts are found to be as follows: The truck at issue, CT Page 11080 vehicle number 8704, was towed into the plaintiff's repair facility on or about May 2, 1994 after it broke down on the highway. The driver reported that a reading of low oil pressure preceded the breakdown, and the defendant, as owner of the truck, asked that the problem be located and that a report be made to it by the plaintiff.
There was conflicting testimony as to what the plaintiff was asked to do. A witness for the defendant owner of the truck testified to the effect that the repair shop was told to find the problem and fix it, without any need to check for authorization as to the scope of the repairs or their cost. A witness for the plaintiff testified that there was, instead, a conversation in which the plaintiff was asked to investigate the source of the problem and to report it.
A witness for the defendant testified that the truck had travelled 275,000 miles and was worth only between $1,000 and $2,000 at the time it was brought in on this occasion. The court does not find it credible that the owner of a vehicle worth so little would give a repair shop carte blanche to repair all mechanical deficiencies it found, and the court therefore believes Mr. Gargano's report that the defendant asked for limited repairs and asked to be told of anything beyond those repairs.
The invoice for the services performed, Exhibit A, contains a note advising the truck's owner of a finding of engine knock and indicating the need for an overhaul. The court finds that the defendant decided not to order and pay for an overhaul but to take its chances that the truck would last out the season (or some other amount of time commensurate with its value) and that it lost that gamble when the engine seized shortly after the truck was driven away from the plaintiff's facility.
The defendant took the position at the hearing that it was unaware of the report of engine knock until some time after the second breakdown. It appears to the court that if the owner had not been told of the engine knock its vehicles manager would have complained vociferously immediately after the engine seized and would have demanded that the subsequent repair be made at no charge. The testimony included no such scenario. Instead, the defendant's employees returned to the plaintiff and negotiated at some length as to charges for the purchases and installation of a new engine, a course of events that suggests that they realized they had made the wrong choice in not requesting an immediate CT Page 11081 overhaul to address the engine knock.
It was not until several weeks later that the defendant took the position that the engine seizure was caused by the failure of the plaintiff to diagnose and repair the mechanical problem that led to the engine seizure.
The court is puzzled as to why the defendant chose to negotiate the purchase and installation of a reconstructed engine in the truck, especially since its agent testified that the addition of a new engine, which was to cost over $10,000, would increase the value of the truck only to about $4,000. Either his estimates of value are in error or some motivation existed as to which no witness testified.
The court finds, however, that the defendant authorized the reconstruction of the engine and did not in any way suggest that it did not intend to pay for it. Exhibit B, which outlined repairs costing $11,983.33, was signed by an authorized agent of the defendant. Before Exhibit B was signed, the defendant had been furnished with two written estimates indicating a probable cost of $12,023.58 and, alternatively, of $9,449.40, depending on whether the core of the old engine could be reused. As a result of this issue, which could not be resolved until the repairs were started, the final bill was $11,980.33, and the unusable core was offered to the defendant. The court finds that the process of estimating cost and the authorization provided together are likely to be held to satisfy the requirements of General Statutes § 14-65f.
The defendant claims that twenty-six days after the engine was replaced the truck required repairs to its clutch. No testimony was presented that persuaded the court that this repair was the result of negligent performance of repairs by the plaintiff, especially given the mileage of the vehicle and the alternate explanation of a manufacturing defect.
The court does not find that the defendant has established probable cause that its probable liability for the cost of repairs performed will be reduced by a finding of an offset for negligent performance of the prior or subsequent services.
The court finds that the plaintiff has established a sufficient probability of recovery for the claimed unpaid charges as well as interest thereon to the projected date of trial. The court has therefore authorized the plaintiff to attach the CT Page 11082 defendant's property to the value of $13,000. The defendant has been granted leave to substitute a bond.
Beverly J. Hodgson Judge of the Superior Court