[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE' MOTION FOR PREJUDGMENT REMEDY
On or about December 28, 1988 Plaintiff Bull Hill Associates as landlord and defendant Savin Rock Seafood, Inc. as tenant entered into a written contract whereby the latter leased approximately 3,250 square feet of space for use as a restaurant in premises known as 260 Bull Hill Lane, a part of a single-story mall situated in Orange, Connecticut. Defendants Joseph Celentano, Jr. and Michael Celentano signed a personal guarantee underwriting the corporate defendant's obligations under the lease. The lease covered an initial five-year term ending on or about February 28, 1994, with an option to renew for three consecutive years thereafter.
Under the written lease the amount due the plaintiffs monthly consisted of three items: basic rent; common-area maintenance (CAM) charges; and pro-rata real estate taxes. The lease states that the basic monthly rent was $4,875 from commencement until the end of February 1991; $5,460 from March 1, 1991 through the end of February 1993; and $6,115, plus a consumer price index adjustment, from March 1, 1993 until its termination in February of 1994. The lease states further that the monthly CAM charges were $387.67, and the monthly tax adjustment was $340.00.
At the commencement of the lease the plaintiffs presented the defendant with a vanilla box — a trade term which means space enclosed by sheetrock walls, taped and ready for a final finish. The plaintiffs maintain that they were entitled to a vanilla box upon the defendants' surrender of the premises; Defendant Savin Rock Seafood, Inc. has vacated the premises after paying what it contends was a negotiated lower monthly rent of $4,000 over a considerable period of time. The plaintiffs dispute the duration of the rental reduction, and claim that the defendants owe substantial sums as unpaid rent, CAM charges and taxes, as well as for not returning the premises in a vanilla-box condition and for leaving the CT Page 8534 premises in a damaged condition.
The plaintiffs seek an order from this Court permitting a prejudgment attachment of the defendants' assets in an amount $120,115.31 as security for the later satisfaction of their claim that the defendants owe at least that amount collectively in unpaid rent, unpaid CAM charges, unpaid taxes, and damages.
From the evidence adduced at the hearing, the Court finds the facts stated hereinafter. At the time of the signing of the lease the owners of the subject premises were Howard Hecht and plaintiff Robert Ginsburg doing business as Bull Hill Plaza Associates. In February of 1989, Robert Ginsburg purchased the ownership interest of his partner and was the sole owner until about January 1, 1994, when title to the premises was conveyed to a new entity by the name of New Bull Hill Plaza Associates, the assignee of the subject lease and guarantee.
In the Spring of 1989 the principals in Savin Rock Seafood, Inc. authorized attorney Kalman Sachs to contact Robert Ginsburg, also an attorney, for the purpose of negotiating a reduced rent for the subject premises. Attorney Kalman Sachs met with Robert Ginsburg. Mr. Robert Ginsburg testified that he verbally agreed to reduce the rent to $4,000 per month only for the months of July, August, September and October of 1991. Attorney Kalman Sachs testified that the agreement to reduce the rent was not limited to four months.
The premises were the subject of a foreclosure action which was pending from sometime in 1991 until some time in 1994. In the wake of the financial difficulties of the mortgagor, one of the mortgagees, American National Bank, exercised its rights, during the Summer of 1991, pursuant to an assignment of rents, to receive rental payments directly from tenant Savin Rock Seafood, Inc. Several checks in the amount of $4,000 were mailed directly to American National Bank or its representatives. However, monthly rental checks, accompanied by transmittal letters characterizing the checks as rental payments in the amount of $4,000 were forwarded directly to the plaintiff from May of 1992 until December of 1993. CT Page 8535
Although Robert Ginsburg claims that the reduction in rent covered only the aforesaid four months, the Court finds that the plaintiff's acceptance and, with rare exception,[1] thereafter cashing of defendant's monthly rent checks in the amount of $4,000 over an extended period of time (including the time from March 1992 through December of 1993) constitutes a modification of the base rental amount to $4,000 for the balance of the term of the written lease. The Court finds further that the plaintiff's interest in receiving a continuous stream of $4,000 monthly payments, rather than risking addressing a dispossession, vacancy, and re-rental, provided value to the plaintiff for accepting the modification.
The Court finds that inasmuch as the modification occurred after the parties signed their written lease, the parol evidence rule does not prohibit the receipt of evidence of the modification. Therefore, the Court accepts as full exhibits the letters of transmittal accompanying the rent checks which were mailed to the plaintiff.
Defendant Joseph Celentano, Jr. testified that he did not pay the rent for January of 1994 because he planned to leave the premises at the termination date in the lease, and that he had posted an eleven thousand dollar letter of credit as a security deposit which the plaintiffs could use in satisfaction of the majority of any outstanding rental claims. Defendant Joseph Celentano, Jr. testified that the principals in Savin Rock Seafood, Inc. decided not to renew their lease. Savin Rock Seafood, Inc. vacated the premises on March 31, 1994- one month after the lease expired by its own terms. The defendants take the position that they owe only $1,000 in back rent to the plaintiff inasmuch as the $11,000 security deposit is sufficient to satisfy the monthly rent of $4,000 for January, and $4,000 for February of 1994, leaving the balance of $3,000 for application to the base rent for March of 1994.
The foregoing finding as to the modification of base rent does not apply to plaintiff's claims for CAM charges and pro rata share of real estate taxes for the reason that they were adjusted separately. CT Page 8536
As to the plaintiffs' claim that the defendants are responsible for not restoring the premises to a vanilla-box and for damages thereto, defendant Joseph Celentano testified that he left the premises with the understanding from the plaintiff that the premises be left not in a vanilla-box condition but in a condition which would accommodate another restaurant. Therefore, he did not remove a lot of the fit-up fixtures. Plaintiff Robert Ginsburg testified that he expected to receive the premises in a vanilla-box condition, and certainly not in the damaged condition in which he found them. The plaintiff estimates that restoration of the premises would cost about $17,000.
Standard for Reviewing Application for Prejudgment Remedy
The legal standard for judging the merits of anapplication for prejudgment remedy is whether sufficientevidence has been presented to support a finding by theCourt that ". . . there is probable cause to believe thata judgment will be rendered in favor of the plaintiff ina trial on the merits." Bank of Boston Connecticut v.Schlesinger, 220 Conn. 152, 156 (1991). The Court mustdecide probable cause by weighing probabilities, both oflegal and factual issues. Augeri v. C. F. Wooding Co.,173 Conn. 426, 429 (1977).
 Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false. (Citation omitted) The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim.
New England Land Co., Ltd v. DeMarkey, 213 Conn. 612, 620.
Applying the foregoing standard, the Court finds from an examination of the evidence produced at the hearing on the application for prejudgment remedy, including an CT Page 8537 examination of the demeanor of the witnesses, that the plaintiffs have not produced evidence which enables this Court to find probable cause that they will prevail on the merits of their claim for back rent or damages in the amounts sought. The Court finds that the evidence presented by all parties supports a finding of probable cause to believe that the plaintiffs through Robert Ginsburg initially by his words and then conduct agreed to a modification of the basic rental charge to $4,000 per month from July 1991 through the end of the lease term — February 28, 1994.
The Court finds that the plaintiffs have produced evidence sufficient to support a finding of probable cause that they will prevail on their claim that the defendants are responsible for CAM charges, pro-rata share of real estate charges, and for some portion of the damaged condition of the premises. Furthermore, the Court finds that probable cause has been established for the plaintiffs' claim, made pursuant to paragraph 17.03 of the written lease, for counsel fees that will be incurred in the collection of monies for damages, including the unpaid CAM and tax charges.
Accordingly, for the foregoing reasons, and upon the foregoing authorities, this Court authorizes a prejudgment remedy in the total amount of $45,000.
Clarance J. Jones, Judge