[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION FOR PJR ATTACHMENT
After hearing on the Plaintiff's application for a prejudgment remedy attachment in this matter, the Court finds the facts as follows:
1. On June 1, 1992 the plaintiff acting in the name of "South Main Corporation" entered into a three year lease with the defendants, Adrian DiMario, and Cheryl Guerrie, a/k/a Cheryl Ann Guerrie, for two units (described as units 5 6 but also known as units 1 2) of a commercial building at 97 South Main Street, Newtown, Connecticut. A copy of the said written lease is marked as Plaintiff's Exhibit 2 ("Pl. Ex. 2", herein).
2. On November 18, 1992 the parties executed an "Assignment of Lease" (Pl. Ex. 3) correctly identifying Daniel T. Riccio individually as the landlord and causing the defendant, DMG, Inc. to be added as a tenant. CT Page 3237
3. In the late summer or early fall of 1994 the defendants, Adrian DiMario, Cheryl Guerrie and DMG, Inc. sought to sell the restaurant business which they had been operating under the name "Piccolo Mondo".
4. Under the terms of the lease with the plaintiff, the defendants were required to obtain the plaintiff's approval before there could be any Assignment of Lease. The approval of any such Assignment of Lease could be granted or denied depending on certain criteria set forth in paragraph 10 of the "Addendum" annexed to the lease (Pl. Ex. 2).
5. In the fall of 1994 DMG, Inc., Adrian DiMario and Cheryl Guerrie requested that the plaintiff approve an assignment of the lease to a new tenant which new tenant was the proposed buyer of the Piccolo Mondo business.
6. One of the several criteria which the plaintiff was entitled to consider whether to approve or deny a requested assignment of the lease was the "financial strength" of the proposed tenants to whom the lease was to be assigned.
7. In the instant case, as a condition of approving the assignment of the lease to a limited liability company formed or to be formed by Thomas Wickson and David Krause, to be known as "K W, LLC", the plaintiff required that the defendants, Adrian DiMario, DMG, Inc. and Cheryl Guerrie remain liable on the lease as tenants, even though K W, LLC was to be in possession of the premises. The plaintiff further required that all of the tenants exercise their option to extend the term of the lease by three years.
8. In order for the tenants to exercise their option for a second three year term, the notice of the exercise of the option was required to be received by the plaintiff at least six months prior to the expiration of the lease, or in the instant case, prior to January 31, 1995.
9. On or about December 14 and 19, 1994 the plaintiff as landlord, Adrian DiMario, Cheryl Guerrie, DMG, Inc. and K W, LLC, all as tenants, and Thomas Wickson and David Krause as guarantors, all executed a "Consent to Assignment of Lease" (Pl. Ex. 1) pending the closing of the sale of the Piccolo Mondo restaurant business to K W, LLC. CT Page 3238
10. The closing on the sale of the restaurant business occurred on or about January 10, 1995.
11. Payment for the purchase of the business by K W, LLC was made partly in cash and partly by promissory notes, one such note being payable to Cheryl Guerrie and the other such note being payable to Adrian DiMario.
12. Shortly after the said closing, Cheryl Guerrie left Connecticut and moved to Colorado.
13. In October 1995 K W, LLC failed to pay the note due to Cheryl Guerrie.
14. Cheryl Guerrie thereupon requested that Mr. DiMario inquire of K W regarding the failure to pay. DiMario did so inquire and he further discussed the non-payment with Thomas Wickson who told DiMario that things were slow with the restaurant but that everything would be alright in the near future.
15. Also in October 1995, K W, LLC failed to pay the rent due to Daniel T. Riccio.
16. In November 1995 K W, LLC again failed to pay the note due to Cheryl Guerrie and also failed to pay the note due to Adrian DiMario.
17. On November 17, 1995 Daniel T. Riccio caused a Notice to Quit to be served upon K W, LLC and all of the other tenants, with service on the other tenants being made at the restaurant and not in person.
18. After service of the said Notice to Quit, K W, LLC paid one month's rent to Daniel T. Riccio.
19. K W, LLC again failed to pay the notes due to Adrian DiMario and Cheryl Guerrie in December 1995.
20. On or about December 10, 1995 Adrian DiMario met with Thomas Wickson at the restaurant.
21. By virtue of paragraph 6 of the Consent to Assignment of Lease, Adrian DiMario was entitled to take possession of the restaurant back from K W LLC without any further consent of the CT Page 3239 plaintiff.
22. Thomas Wickson tried on two occasions near the end of December 1995 to get Adrian DiMario to meet with Wickson at the restaurant to discuss returning operation of the restaurant business in the leased premises to Adrian DiMario, but Adrian DiMario failed to meet Wickson at the premises on either occasion.
23. On or about December 26, 1995 Daniel T. Riccio observed that the premises were not open for business. As a result thereof, Riccio entered the premises and discovered that K W, LLC had abandoned the premises leaving the said premises in a state of disarray.
24. Daniel T. Riccio thereupon took possession of the premises and caused the front door lock to be changed.
25. On December 26 or December 27, 1995 Daniel T. Riccio spoke with Adrian DiMario, advised him of the abandonment of the premises and arranged to meet with Mr. DiMario at the premises.
26. When Mr. DiMario arrived at the premises for such meeting, Daniel T. Riccio was inside the premises and Mr. DiMario was unable to enter through the front door because he had no key.
27. At said meeting, the plaintiff and the defendant, DiMario, inspected the premises together and Mr. DiMario also observed that the premises had been abandoned by K W, LLC.
28. Daniel T. Riccio, the plaintiff, thereupon inquired if Mr. DiMario, the defendant, would take back the restaurant business again. In response thereto, Mr. DiMario replied in the negative.
29. Shortly after the business was abandoned by K W, LLC the plaintiff met with a prospective purchaser, George Pastorok III, who claimed to have some restaurant experience. George Pastorok III also happened to be a member of a club to which the plaintiff belonged.
30. Mr. Pastorok had an immediate interest in operating a restaurant at the Piccolo Mondo premises and desired to add a third unit to the leased premises. CT Page 3240
31. On or about January 5, 1996, George Pastorok, III paid $500.00 to Mr. DiMario as a "deposit for the sale of Piccolo Mondo" [sic] The receipt for the deposit is in evidence as Defendants Exhibit A.
32. The plaintiff was concerned that whoever took over as tenant would have the financial ability to pay the rent.
33. The plaintiff was away on vacation during the 2nd and 3rd weeks of January, 1996.
34. When the plaintiff returned from vacation he determined that George Pastorok, III did not have the financial strength to be a viable tenant. As a result thereof, the plaintiff turned his attention to negotiating a lease for three units with a prospective tenant named "Smith", who had offered Mr. Riccio a higher rent than had Mr. Pastorok III.
35. Mr. DiMario and the plaintiff eventually met and discussed the matter and Mr. DiMario convinced the plaintiff that Mr. Smith did not have sufficient financial backing to meet Mr. Riccio's requirements for a tenant.
36. Shortly thereafter, George Pastorok, Jr. agreed to serve as a guarantor of a lease between his son, George Pastorok III and the plaintiff, and thereafter negotiations over the terms of the lease between the plaintiff and George Pastorok, III were undertaken. It was agreed that the rental rate would be the same amount that Mr. Smith had been willing to pay.
37. The negotiations culminated in the execution of a lease on March 8, 1996, which lease was guaranteed by George Pastorok, Jr. A copy of the lease executed by Mr. Pastorok, III is in evidence as Pl. Ex. 5.
38. The lease ultimately signed by the plaintiff and George Pastorok, III included an additional unit at 97 South Main Street. The lease, then, was for stores 4, 5 6 rather than only 5 6. These units are also shown as units 1, 2 3 on the sketch annexed to the lease.
39. There is no misunderstanding among any of the parties as to which units are involved even though the numbering sequence used on the exhibits to the various leases uses two different number systems. CT Page 3241
40. The lease negotiated with George Pastorok, III and guaranteed by George Pastorok, Jr. includes two months of free rent and three years of escalating rents, plus two three year option terms.
41. The original lease between the plaintiff, acting in the name South Main Corporation and the defendant, Adrian DiMario, also provided for two months free rent.
42. The base rental in the DiMario lease for all times relevant to this PJR action was $2,533.00 per month.
43. In addition to the base rental, the original lease provides for the payment of 18.75% of the real estate taxes and insurance on the 97 South Main Street property. Those taxes are $210.49 per month and the insurance is $52.27 per month.
44. In addition, the lease calls for payment of a "maintenance fee" which starts at $50.00 per month and escalates in proportion to the rent.
45. Based on the initial base rental being $1,833.00 per month and the rental for the first option term being $2,533.00 per month the maintenance fee should have escalated 1.38 times to a figure of $69.00 per month for the two units, but it appears from the testimony that the plaintiff is only claiming $50.00 per month in this PJR proceeding.
46. The original lease also requires payment for water charges which the plaintiff has calculated as being $700.00 due as of the date K W, LLC abandoned the premises.
47. After K W, LLC abandoned the premises, the plaintiff was forced to provide heat and light to the premises at a cost of $361.26 for electricity and a cost of $207.22 for gas until such time as George Pastorok III became a replacement tenant.
48. Both the original DeMario lease and the subsequent Pastorak lease provide for the payment of a proportionate share of the taxes and insurance of the premises at 97 South Main Street so that there is no difference between the two leases on that basis.
49. Article THIRD of the DeMario lease provides for the CT Page 3242 payment of counsel fees. The plaintiff has conceded that it did not furnish the Court any basis on which to calculate those counsel fees but this concession only applies to the prejudgment remedy and not to the loss of itself.
The hearing in probable cause for issuance of a prejudgment remedy is not intended to be a trial on the merits. McCutcheon Burr, Inc. v. Berman, 218 Conn. 512, 590 A.2d 438 (1991). In considering an application for a prejudgment remedy, the trial court determines whether or not there exists "probable cause to sustain the validity of the plaintiff's claim." General Statutes § 52-278d(a). The concern is "whether and what extent the plaintiff is entitled to have the property of the defendant held in the custody of law pending adjudication of the merits of that action." E.J. Hansen Elevator, Inc. v. Stoll, 167 Conn. 623,629-30, 356 A.2d 893 (1975).
The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim." New England Land Co., Ltd. v. DeMarkey,213 Conn. 612, 620, 569 A.2d 1098 (1990). "Civil probable cause" such as will justify resort to a prejudgment remedy constitutes abona fide belief in the existence of facts essential under law for the action and as would warrant men of ordinary caution, prudence, and judgment, under the circumstances, in entertaining it." One Fawcett Place Ltd., Partnership v. DiamandisCommunications. Inc., 24 Conn. App. 524, 589 A.2d 892 (1991).
The task of the trial court is essentially one of weighing probabilities; that task requires the exercise or broad discretion. Dow Condon, Inc. v. Anderson, 203 Conn. 475, 479,525 A.2d 935 (1987). "This weighing process applies to both legal and factual issues." Bank of Boston Connecticut v. Schlesinger,220 Conn. 152, 156, 595 A.2d 872 (1991). In ruling on a prejudgment remedy motion, the court must evaluate not only the plaintiff's claim but also any defenses raised by the defendant.Haxhi v. Moss, 25 Conn. App. 16, 591 A.2d 1275 (1991).
Having fully considered the evidence presented at the hearing, having further considered the credibility of the witnesses who testified at said hearing and having further considered the arguments of counsel, the Court finds that probable cause exists to sustain the validity of the plaintiff's claim in this matter. CT Page 3243
Accordingly, the plaintiff's Application for a Prejudgment Remedy attachment is granted in the amount of $28,000.00.
BY THE COURT
CARROLL, J.