[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Pursuant to Connecticut General Statutes § 52-278, the plaintiff insurance company seeks to attach to the value of $250,000 property of the defendant Door Wizard, LLC., et al., hereafter collectively "OMG"1*
due to the claimed breach of an indemnity agreement. The indemnity agreement was signed by OMG in connection with the construction of the Timex headquarters in Middlebury for which OMG was to supply all glass under a purchase order issued to it. As a result of the indemnity agreement, the plaintiff issued a performance bond for the glass work for the Timex project, guaranteeing OMG's performance under the purchase order. The court conducted a hearing on August 14, 2002 as provided by statute and finds, for the reasons set forth in detail below, that the plaintiff is entitled to the attachment. The court makes the following findings of fact:
 I FACTS
The indemnity agreement for the Timex project was signed by the individually named defendants, Priscilla Petrick and Gary Leibowitz, and by OMG on June 23, 2000. The court finds from the testimony that OMG, acting through Gary Leibovitz, admitted that there were problems with the project in June 2000 and finds that monies paid under this contract in the beginning of the project were being used by OMG for other construction projects not related to the Timex project. As a consequence of the diversion of the funds from the Timex project to other earlier projects, OMG was unable to pay its materials suppliers and subcontractors for the Timex project.
The plaintiff insurer monitored the situation between OMG and its suppliers and OMG's subcontractors and, in August 2000, made attempts to remedy the problems by setting up a schedule of payments which would aid the defendant in timely meeting its obligations and completing the CT Page 12325 project.1** Despite these efforts, OMG never made any of the payments promised and in September 2000, in accordance with the indemnity agreement, the plaintiff made demand on the defendants for payment of collateral[2] in the amount of $250,0000, which has never been paid.
In October 2000 when OMG's contract on the Timex project was terminated, the plaintiff, Acstar, the corporate surety, was called upon by Timex to perform under its bond. It stepped in to evaluate the future work to be completed and the payment claims for materials delivered and work already performed. It met with Timex to make arrangements to complete the work and to mitigate any damages, which might flow from the termination of the contract and OMG's alleged breach of the contract. Thereafter, the plaintiff paid certain claims to the approximate amount of $200,000.00. It estimates it has outstanding legal fees, invoices for work done and remaining punch list items totaling approximately another $50,000.00.
OMG claims in opposition, that the plaintiff corporate surety acted in bad faith by taking over the project without first evaluating and determining whether OMG breached its contract with Timex and in setting the amount of the reserve. OMG claims Acstar did not evaluate the dispute OMG had concerning certain change order items and monies owed it. It further claims that the plaintiff worked with another company, a subcontractor of OMG known as Cherry Hill, to complete the project and that its dealings with Cherry Hill were also in bad faith to its obligations to the defendants. The resolution of these claims requires a consideration of the law that applies to this case as well as consideration of further facts.
 II DISCUSSION A. Prejudgment Remedies and Standard of Proof
The court appreciates that the prejudgment remedy hearing is not a trial on the merits of the claims raised in this case. Connecticut General Statutes § 52-278 (c) provides that the party seeking a prejudgment remedy must demonstrate that there is probable cause that a judgment will be rendered in favor of the plaintiff. Probable cause is not as demanding a standard as proof by a fair preponderance of the evidence. It has been defined as "a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Ledgebrook Condominium Association, Inc. v. LuskCT Page 12326Corporation, 172 Conn. 577, 584, 376 A.2d 60 (1977), citing Wall v.Toomey, 52 Conn. 35, 36 (1884). The concern at the prejudgment hearing is "whether and to what extent the plaintiff is entitled to have the property of the defendant held in the custody of law pending adjudication of the merits of that action." E. J. Hansen Elevator, Inc. v. Stoll,167 Conn. 623, 629-630, 356 A.2d 893 (1975).
Ultimately, the task of the trial court is essentially one of weighing probabilities and that task requires the exercise of broad discretion. Our Supreme Court has recognized that "[t]he court's role in such a hearing is to determine probable success by weighing probabilities," Bank ofBoston v. Schlesinger, 220 Conn. 152, 156, 595 A.2d 872 (1991) quotingNew England Land Co. Ltd. v. DeMarkey, 213 Conn. 612, 620-21, 569 A.2d 1098
(1990). And in evaluating whether probable cause exists that a judgment will enter in favor of the plaintiff, the court must evaluate any defenses raised by the defendant. Haxhi v. Moss, 25 Conn. App. 16,591 A.2d 1275, 1277 (1991). "A good defense . . . will be enough to show that there is no probable cause that judgment will be rendered in the matter in favor of the plaintiff." Haxhi v. Moss, supra, 25 Conn. App. 20, quoting Augeri v. C.F. Wooding Co., 173 Conn. 426, 429, 378 A.2d 538
(1977). In order to determine whether these legal standards have been met, the court must further consider the law with respect to the obligations of good faith and fair dealing and the indemnity agreement signed between this corporate surety and OMG.
 B. Obligations pursuant to the indemnity agreement
Resolving the disputes between the parties concerning the indemnity agreement involves a determination of what the parties intended by their contractual language. "Where there is definitive contract language, the determination of what the parties intended by their contractual agreement is a question of law." Bank of Boston v. Schlesinger, Supra 220 Conn. 152,158. An indemnity agreement "will be construed to cover such losses which appear to have been intended by the parties." Leonard Concrete Pipe Co.v. C. W. Blakeslee Sons, Inc., 178 Conn. 594, 599, 424 A.2d 277
(1979). "The question is not what intention existed in the minds of the parties, but what intention is expressed in the language used." (Citations omitted.) Barnard v. Barnard, 214 Conn. 99, 110, 570 A.2d 690 (1990). Ambiguities in the document are to be construed against the drafter. SeeHansen v. Ohio Casualty Ins. Co., 239 Conn. 537, 544, 687 A.2d 1272
(1996). A "court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different reasons." (Citations omitted; internal quotation marks omitted.) Barnardv. Barnard, supra, 214 Conn. 110. CT Page 12327
The plaintiff, in its application and proposed writ, summons and complaint, points to Paragraph 3 of its indemnity agreement for its right to set up a reserve and demand payment of a sum of money as collateral security for the bond. Specifically the paragraph states:
 3) "If the Surety shall set up a reserve to cover any claim, liability, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Surety a sum of money equal to such reserve and any increase thereof as collateral security on such bond or bonds."1***
The court finds the language of this paragraph is clear and unambiguous. It grants to the plaintiff the right to act to set up the reserve and demand payment. It is also our basic contract law that "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) Gupta v. New Britain General Hospital,239 Conn. 574, 598, 687 A.2d 211 (1996). That is to say, the plaintiff's actions in setting the reserve and the amount of its demand must have been reasonable under the circumstances, both to its obligations and those of OMG under this agreement. The court finds from the evidence that Acstar did act reasonably in attempting to ascertain the amount of any losses and claims to be paid to subcontractors and materials suppliers both due at the time and due in the future to complete the work on the project. The court concludes that no bad faith has been demonstrated. It further finds that the plaintiff made appropriate demand on OMG for further collateral, which OMG never provided. The court finds from these facts that OMG, not the plaintiff, has breached the indemnity agreement by its actions.
The central thrust of OMG's claim relates to Acstar's alleged bad faith in taking over the project without first determining that OMG had defaulted under the contract with Timex.1**** While counsel for the parties each provided cases to the court for its consideration, which the court has reviewed, the court notes that Paragraph 5 of the indemnity agreement initially addresses the plaintiff's obligations under such circumstances:
 5) "The Surety, in its sole discretion, is authorized, but not required to. . . . in the event of any breach, delay or default asserted by the obligee in any said bonds or in the performance of the contract . . . or the failure to diligently prosecute the work under any contract, to pay for labor and CT Page 12328 materials used in the prosecution of the contract or, . . . . to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract or cause the same to be completed . . . and to take any other action which the Surety may deem appropriate. The Indemnitors hereby release and discharge the Surety from any and all liability for its actions and omissions. (Emphasis added.)
The court finds that the plain language of the agreement provides for the actions, which Acstar undertook to keep the Timex project going and to complete it. The court finds, from the evidence, that Timex, the obligee under the bond, both asserted OMG's default as well as OMG's earlier failure to diligently pursue the work due under the contract to seek benefits under the bond. The court concludes that the plaintiff's actions were not in bad faith, but proper under this contract.
Further, the court agrees with the plaintiff that an actual loss need not be sustained by the surety before a claim for indemnification were made. "Generally, indemnity agreements fall broadly into two classes, those where the contract is to indemnify against liability and those where it is to indemnify against loss. In the first, the cause of action arises as soon as liability is incurred, but in the second it does not arise until the indemnitee has actually incurred the loss. . . . Where an indemnity agreement, however indemnifies against liability as well as against loss . . . the indemnitee does not have to wait until the loss occurs, but may sue on the agreement as soon as liability is incurred."24 Leggett Street Limited Partnership v. Beacon industries, Inc.,239 Conn. 284, 306, 685 A.2d 305 (1996). The contractual obligation arises on mere liability even prior to loss. Balboa Ins. Co. V.Zalenski, 12 Conn. App. 529, 534-535, 532 A.2d 973, cert. denied,206 Conn. 802, 532 A.2d 1315 (1987). To reach this conclusion, the court construes both the bond and the indemnity agreement together, as the issuance of the bond is directly connected to and integrally intertwined with the indemnity agreement. One without the other is not complete and the indemnity agreement repeatedly refers to the bond and its obligations.
While the plaintiff surety's obligations under the agreement remain subject to its obligations of good faith and fair dealing, under the plain meaning of the language of the agreement, it has wide latitude to act to, as its Vice President testified to "mitigate any damages." The court finds from all the evidence that it acted properly and in accordance with its obligations under the agreement.
Much time was spent at the hearing concerning dollar amounts of CT Page 12329 estimates made for various specific claims of certain subcontractors on the Timex project, with OMG claiming that such payment claims were not properly investigated and the amounts expended should not have been paid. The court finds that pursuant to the language of the agreement, the plaintiff had sole discretion to make estimates and exercise its judgment concerning what suppliers to pay and in what amounts. Further, the court has concluded that Acstar's actions in attempting to mitigate any potential damages were reasonable. The court further concludes that the plaintiff's total estimate of the loss, with the benefit of a year of hindsight and the actual payment of claims, was remarkably accurate.
In weighing the claims made by the plaintiff and the defenses asserted, the court finds that the plaintiff has established probable cause that a judgment will be rendered in this matter in its favor pursuant to its proposed two count complaint for indemnification. The individual defendants did not personally attend the prejudgment remedy hearing and all evidence was established through the plaintiff's witness. The court finds, from the testimony, that the defenses raised by OMG are not credible and have not been even minimally established. These defenses do not provide assistance to OMG in defeating this prejudgment remedy application. The court therefore grants the application for prejudgment remedy, which may issue to attach real property owned by the defendants and located in the Town of New Haven in the amount of $250,000.00. The court further orders a disclosure of assets by the defendants.
BY THE COURT
 _________________________ Barbara M. Quinn, Judge