BLAKESLEE ARPAIA CHAPMAN, INC. *v.*
EI CONSTRUCTORS, INC., ET AL.
(11139)

DUPONT, C. J., LANDAU and FREEDMAN, Js.

Argued March 31—decision released July 20, 1993

*William H. Clendenen, Jr.,* for the appellant (plaintiff).

*Allan J. Kleban,* with whom, on the brief, was *Daniel S. Blinn,* for the appellee (defendant Aetna Insurance Company).

DUPONT, C. J. The primary issue presented by this appeal is whether a prejudgment attachment may be obtained by a subcontractor against property owned by the issuer of a construction performance bond pursuant to General Statutes § 49-42 (a).[1] The trial court denied the plaintiff subcontractor's application for a prejudgment attachment because no evidence had been presented that the surety was in financial difficulty, and, consequently, the plaintiff's ability to obtain payment for its work was adequately protected by the bond. We conclude that because a subcontractor has

---

[1] General Statutes § 49-42 (a) provides in relevant part: "Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, may enforce his right to payment under the bond by serving a notice of claim within one hundred eighty days after the date on which he performed the last of the labor or furnished the last of the material for which the claim is made, on the surety that issued the bond and a copy of the notice on the contractor named as principal in the bond. . . . Within ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute, and shall serve a notice on the claimant denying liability for any unpaid portion of the claim. . . . If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the superior court for such sums and prosecute the action to final execution and judgment. . . ."

a direct right of action under General Statutes § 49-42 (a) against a surety upon a contractor's refusal to pay a subcontractor, a subcontractor may obtain a prejudgment attachment against property owned by a surety if two conditions are present. First, the subcontractor must make the requisite showing that there is probable cause to sustain the validity of the subcontractor's claim, and, second, the subcontractor must demonstrate that it does not have adequate security in the bond for the ultimate judgment that will likely be obtained.[2] In this case, the court failed to consider evidence relevant to the issue of whether probable cause existed to uphold the validity of the plaintiff's claim because it determined that the subcontractor had adequate security in the bond. We, therefore, affirm the denial of the plaintiff's application for a prejudgment remedy on the particular facts of this case.

The relevant facts are not in dispute. In January, 1983, the defendant EI Constructors, Inc., entered into a contract with the defendant city of Waterbury to construct a water treatment plant. As required by General Statutes § 49-41,[3] EI furnished Waterbury with

---

[2] Under the express terms of the bond, a subcontractor cannot recover more than the amount of the bond. We need not decide, however, whether a subcontractor would be entitled to more than the amount of the bond pursuant to other statutes. See footnote 7, infra.

[3] General Statutes § 49-41 provides: "(a) Before any contract exceeding twenty-five thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person, except a design professional, as defined in section 4b-55, that person shall furnish to the state or the subdivision a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract for the use of each such person, provided no such bond shall be required to be furnished in relation to any general bid in which the total estimated cost of labor and materials under the contract with respect to which such general bid is submitted is less than twenty-five thousand dollars or in relation to any sub-bid in which the total estimated cost of labor

a bond, issued by the defendant Aetna Insurance Company[4] in the amount of $21 million to ensure that subcontractors supplying labor and materials for the project would be paid by EI.

The plaintiff, Blakeslee Arpaia Chapman, Inc., subsequently entered into a subcontract with EI to perform part of the work on the treatment plant. Pursuant to the terms of the preprinted subcontract, the plaintiff was to bill EI and be paid monthly. The subcontract also stated that EI's payments to the plaintiff were "conditioned on" payment from Waterbury to EI.[5] Additionally, the subcontract contained a rider stating that EI promised to pay the plaintiff within three business days after receiving payment from the city.

The plaintiff commenced work on the project sometime in the spring, 1984, but on September 14, 1984, the city terminated its contract with EI, and EI ordered the plaintiff to cease all work on the project. Meanwhile, the plaintiff had sent invoices to EI requesting payment in accord with the terms of the subcontract, but EI refused to pay the invoices. The plaintiff then gave notice to Aetna of its claims, but Aetna similarly refused to pay.

and materials under the contract with respect to which such sub-bid is submitted is less than fifty thousand dollars. Any such bond furnished shall have as principal the name of the person awarded the contract.

"(b) Nothing in this section or sections 49-41a to 49-43, inclusive, shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to the bond herein referred to, except that no such officer shall require a performance bond in relation to any general bid in which the total estimated cost of labor and materials under the contract with respect to which such general bid is submitted is less than twenty-five thousand dollars or in relation to any sub-bid in which the total estimated cost of labor and materials under the contract with respect to which such sub-bid is submitted is less than fifty thousand dollars."

[4] The defendant Aetna Insurance Company is now part of the CIGNA Property and Casualty Insurance Company. We will refer to it in this opinion as Aetna.

[5] This clause is sometimes referred to as a "pay when paid" clause.

The plaintiff commenced this action against EI, Aetna and the city on November 30, 1984, seeking payment of its invoices, incidental expenses caused by the alleged breach of the subcontract and interest costs. In its answer, Aetna claimed as a special defense that the plaintiff had no right to immediate payment against it because payment to the plaintiff was conditioned on EI's receipt of payment from Waterbury, which has never occurred. Aetna also claimed that some of the plaintiff's claims are not covered by the terms of the bond. Subsequently, this action was informally stayed pending the outcome of concurrent litigation in federal court that had been commenced on November 19, 1984, by EI against the city for wrongful termination of the prime contract.[6]

On December 5, 1991, seven years after the proceedings had been stayed, the plaintiff applied for a prejudgment attachment in the amount of $1.8 million against Aetna to secure payment of the judgment that the plaintiff expected to recover.[7] Aetna moved to dismiss

---

[6] A federal trial on EI's complaint against the city began on June 13, 1989. After 116 days of trial, the district court granted the city's motion for involuntary dismissal as to the allegation of wrongful termination on May 21, 1991. The court had previously granted summary judgment against EI and in favor of the city on two other counts on March 14, 1989. According to the memorandum of decision of the trial court, the litigation has now been concluded.

[7] The plaintiff alleged in an offer of proof that was attached to its application for a prejudgment remedy that it originally sought recovery in the amount of $415,250 plus prejudgment interest. Approximately three weeks after the complaint was filed, the plaintiff made an offer of judgment to Aetna, pursuant to General Statutes § 52-192a, in the amount of $300,000. Aetna failed to respond to this offer, and, thus, under § 52-192a, the plaintiff will be entitled to prejudgment interest on the entire amount of the judgment from the date the action was commenced if it recovers an amount in excess of $300,000 after trial. See *Lutynski* v. *B.B. & J. Trucking, Inc.,* 31 Conn. App. 806, 628 A.2d 1 (1993). The plaintiff therefore claims that since there is probable cause to believe that it will ultimately recover an amount in excess of its offer of judgment it is entitled to a prejudgment attachment in the amount of $1.8 million.

the plaintiff's application, arguing that a prejudgment attachment was improper because the plaintiff's claim for payment is already secured by the performance bond, and that the plaintiff's right to collect on its claim is conditioned upon the receipt of payment by EI from the city, a condition that has not yet occurred. Aetna amplified its position and alleged additional facts in an offer of proof filed simultaneously with its motion to dismiss. Aetna alleged that the plaintiff had received partial payment for its work, and that any claims by the plaintiff for payment for extra work performed had been denied by the city, thereby precluding recovery for those claims. The parties also submitted a joint stipulation of facts stating that Aetna had received a financial rating of Aa3 from Moody's Investors Rating Report of January 1, 1992, and that the amount of the bond issued by Aetna is $21,274,000. The plaintiff does not assert that the amount of the bond is insufficient to pay its claim because the total amount of all potential claims that may be made against the bond by all of the protected subcontractors would not exceed the face amount of the bond.

The court held a hearing on the plaintiff's application on February 18, 1992. At the hearing, the court indicated that it would not grant an attachment against Aetna unless there was some evidence that its bond could not be honored, and it denied the application without comment on the same day. The court did not receive evidence on any of the issues raised by either the plaintiff in its application, or by Aetna in its objection and offer of proof.

Upon the request of the plaintiff, the court subsequently issued an articulation of its decision, wherein it stated: "No evidence was offered that Aetna . . . is or was in financial difficulty, so as to afford a basis for the plaintiff's fears that Aetna is in danger of finan-

cial collapse. At the present time, the plaintiff is more than adequately protected. Accordingly, the court denied the request for a prejudgment remedy."

The plaintiff argues that pursuant to General Statutes § 52-278b, a prejudgment remedy is generally available in any action at law or in equity, and that the specific prejudgment remedy of attachment is generally available in any action where the applicant seeks money damages. General Statutes § 52-279. The plaintiff contends that nothing in either statute prohibits a subcontractor from obtaining a prejudgment attachment against property of a surety in a suit brought pursuant to General Statutes § 49-42. The plaintiff further argues that had the legislature intended to prohibit the use of prejudgment attachments against performance bond sureties, it would have done so expressly, citing *People's Bank* v. *Bilmor Building Corporation,* 28 Conn. App. 809, 818, 614 A.2d 456 (1992). The plaintiff concludes that it is entitled to a prejudgment remedy of attachment against Aetna upon a showing that there is probable cause that judgment will be rendered in its favor.

The plaintiff also posits that it is entitled to a prejudgment attachment upon a showing that there is probable cause to sustain the validity of its claim, and that it is not required to show that Aetna would not have sufficient assets to satisfy the judgment. Finally, the plaintiff claims that the trial court committed clear error by improperly failing to consider and resolve the issue of whether the "pay when paid" clause in the subcontract was valid because that issue is central to whether the plaintiff has sustained its burden of demonstrating probable cause.

In response, Aetna maintains that our review of the trial court's decision to deny the plaintiff's application is limited to determining whether that decision con-

stituted "clear error," citing *Solomon* v. *Aberman,* 196 Conn. 359, 364, 493 A.2d 193 (1985). Aetna claims that the trial court's determination that the plaintiff's claim was adequately secured is not clearly erroneous because Aetna, as surety to EI, issued a payment bond for the benefit of EI's subcontractors in the amount of $21 million. This argument is premised on Aetna's assertion that the plaintiff's claim arises from its contract with EI, and that Aetna's liability to the plaintiff, if any, arises solely by virtue of Aetna's status as surety for EI.

Aetna also argues that the scope of the prejudgment remedy statutes is not as broad as the plaintiff contends. Aetna claims that Connecticut case law does not permit a party to seek additional security for a claim that is already adequately secured, and that General Statutes § 52-304[8] et seq. codifies a policy that surety bonds are adequate security, thereby facilitating the free alienation of property. Lastly, Aetna argues that it was unnecessary for the court to conduct a probable cause hearing or to resolve the "pay when paid" issue once it properly determined that the plaintiff was not entitled to a prejudgment attachment because its claim was adequately secured by Aetna's bond.

The remedy of a plaintiff's attaching and securing a defendant's property to satisfy any potential judgment in the plaintiff's favor was unknown to the common law and has its genesis in our statutory law. *Ledgebrook Condominium Assn., Inc.* v. *Lusk Corporation,* 172 Conn. 577, 582, 376 A.2d 60 (1977). Additionally, because such a remedy can be harsh in its operation, its application has been confined to the limits set by statute. Id., 584–85.

[8] General Statutes § 52-304 provides in relevant part: "When any estate is attached . . . the defendant may apply in writing to the court in which such action may be pending, or any judge thereof, to dissolve the attachment lien upon the substitution of (a) a bond with surety or (b) a lien on any other property of the defendant which has an equal or greater net equity value than the amount secured by such attachment."

Under General Statutes § 52-278c, any person desiring to secure a prejudgment remedy must make application to the court and include, inter alia, "[a]n affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that judgment will be rendered in the matter in favor of the plaintiff." After service of the application and supporting papers, the defendant has the right to appear and be heard at a hearing on the application. General Statutes § 52-278d (a). Section 52-278d (a) specifically provides that this "hearing shall be limited to a determination of whether or not there is probable cause to sustain the validity of the plaintiff's claim." Id.

"Pursuant to our prejudgment remedy statutes . . . the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits. . . . The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. . . . Moreover, this weighing process applies to both legal and factual issues. . . . It is the trial court that must determine, in light of its assessment of the legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim." (Citations omitted; internal quotation marks omitted.) *Bank of Boston Connecticut* v. *Schlesinger*, 220 Conn. 152, 156–57, 595 A.2d 872 (1991).

On appeal, our review of a trial court's denial of an application for a prejudgment remedy is limited to "whether the determination of the trial court con-

stituted clear error." Id., 157. Aetna argues that we should sustain the trial court's determination that the plaintiff is not entitled to an attachment as a matter of law and because the performance bond provides adequate security for its claim.

Before reaching the issue of whether the plaintiff in this case has sustained its burden of demonstrating that there is probable cause to sustain the validity of its claim, we first consider the more general proposition of whether a subcontractor may properly obtain a prejudgment attachment against property of a performance bond issuer.

Under General Statutes § 49-42, any subcontractor who has not been paid by the general contractor within ninety days after a claim for payment is made, "may enforce his right to payment under the [performance] bond by serving a notice of claim . . . on the surety that issued the bond . . . . Within ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute, and shall serve a notice on the claimant denying liability for any unpaid portion of the claim. . . . If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the superior court for such sums and prosecute the action to final execution and judgment. . . ." The statute thus gives a subcontractor a direct right of action against the surety for payment if the enumerated conditions are met.

Upon refusal of a contractor to pay a subcontractor for work and material furnished to a municipal project, the subcontractor has two options. The subcontractor may either bring suit against the general contractor in accord with the provisions of General Statutes

§ 49-41a[9] or, alternatively, may bring an action directly against the surety pursuant to General Statutes § 49-42. Although both of these remedies may be pursued jointly in a single action against both the general contractor and the surety, these two statutory rights are separate and distinct, designed by the legislature to accomplish separate and distinct ends. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.,* 207 Conn. 468, 477, 542 A.2d 692 (1988).

The subcontractor has a right to sue the surety directly upon fulfillment of the stated prerequisites. There is nothing in the statutes or case law to suggest that a subcontractor may not also obtain a prejudgment remedy against the surety. As the plaintiff points out, prejudgment remedies "shall be available to a person in any action at law or equity . . . [who] has complied with the provisions of sections 52-278a to 52-278g, inclusive . . . ."[10] See also *England* v. *England,* 184

[9] General Statutes § 49-41a provides in relevant part: "(b) If payment is not made by the general contractor . . . the subcontractor shall set forth his claim against the general contractor . . . through notice by registered or certified mail. Ten days after the receipt of that notice, the general contractor shall be liable to its subcontractor . . . for interest on the amount due and owing at the rate of one per cent per month. In addition, the general contractor, upon written demand of its subcontractor . . . shall be required to place funds in the amount of the claim, plus interest of one per cent, in an interest-bearing escrow account in a bank in this state, provided the general contractor . . . may refuse to place the funds in escrow on the grounds that the subcontractor has not substantially performed the work according to the terms of his or its employment. In the event that such general contractor . . . refuses to place such funds in escrow, and the party making a claim against it under this section is found to have substantially performed its work in accordance with the terms of its employment in any arbitration or litigation to determine the validity of such claim, then such general contractor or subcontractor shall pay the attorney's fees of such party.

"(c) No payment may be withheld from a subcontractor for work performed because of a dispute between the general contractor and another contractor or subcontractor. . . ."

[10] Under General Statutes § 52-278a (c), a "person" for the purposes of General Statutes § 52-278b, "means and includes individuals, partnerships, associations and corporations."

Conn. 85, 89, 440 A.2d 790 (1981). Moreover, attachments "may be granted upon all complaints containing a money demand against the estate of the defendant, both real and personal," except that such a remedy may not be pursued against any of the defendants specifically enumerated in the statute. General Statutes § 52-279.[11]

Our decision in *People's Bank* v. *Bilmor Building Corporation,* supra, illuminates this point. In *People's Bank,* the defendant corporation executed a promissory note in favor of the plaintiff. The note was secured by a mortgage on property of the corporation and by an individual guarantee signed by the corporation's president. Upon default under the terms of the note, the plaintiff brought suit against the corporation and guarantor. The plaintiff's complaint sought a foreclosure of the mortgage and a deficiency judgment against the corporation and the individual guarantor. The plaintiff also sought a prejudgment attachment against other property of the corporation to secure payment of the anticipated deficiency judgment.

In concluding that the plaintiff in *People's Bank* was entitled to a prejudgment attachment, we noted: "The first sentence of General Statutes § 52-279 authorizes the granting of attachments 'upon all complaints containing a money demand against the estate of the defendant, both real and personal.' The statute then details specific instances when such attachments are not permitted. None of the enumerated exceptions proscribes the use of attachments in foreclosure actions. It is a well established maxim of statutory construction that when a statute enumerates exceptions to a

---

[11] General Statutes § 52-279 provides that an attachment may not be obtained, except upon court order, in actions for slander, libel or invasion of privacy, and may not be obtained against municipal officials and police officers, teachers and school board members, and canine control officers. None of the exceptions enumerated in the statute are applicable in this case.

stated general proposition, anything not excepted is conclusively included. *State* v. *Kish,* 186 Conn. 757, 443 A.2d 1274 (1982).

"There is also no exception for foreclosure actions in the general prejudgment remedy statute. General Statutes § 52-278a through § 52-278h. General Statutes § 52-278b provides for prejudgment remedies in 'any action at law or equity.' Thus, neither the attachment statute nor the prejudgment remedy statute specifically prohibits the granting of a prejudgment attachment in a foreclosure action.

"Similarly, there is nothing in those statutes that specifically prohibits the granting of a prejudgment attachment to secure the payment of a deficiency judgment. If the legislature intended to prevent the use of prejudgment attachments to secure the payment of deficiency judgments in foreclosure cases, then presumably it would have done so. It has not." *People's Bank* v. *Bilmor Building Corporation,* supra, 818.

The reasoning of *People's Bank* is equally applicable here. As in *People's Bank,* the plaintiff is "simply attempt[ing] to avail itself of a commonly used procedural device in order to improve its chances to receive full recovery of a debt owed to it." Id., 822. Had the legislature intended to prevent or limit the use of prejudgment remedies in suits brought under General Statutes § 49-42 it presumably would have done so. We thus conclude that, as a general proposition, a subcontractor who has brought suit against a surety pursuant to General Statutes § 49-42 may also obtain a prejudgment remedy if it can demonstrate the requisite probable cause and the need for the remedy.

In this case, the trial court determined that the plaintiff was not entitled to a prejudgment attachment because no evidence was offered by the plaintiff that Aetna was financially unstable or that the plaintiff was

not adequately secured. Attachments prior to judgment are a procedural device designed to improve a plaintiff's chances for a full recovery after prevailing at a trial on the merits, and are premised on the contingency that a defendant may not be able to satisfy the eventual award of damages to a plaintiff. In the usual case, where one party sues another and no security has been posted to ensure payment of the probable ultimate judgment, a trial court need determine only whether there is probable cause to sustain the validity of a plaintiff's claim, and, if so, set a dollar amount for the attachment that will provide the security.

In cases where some security exists for the payment of the debt, however, as in mortgage foreclosure actions, the question for a trial court is enlarged. In such cases, the court not only must determine what the amount of the judgment will probably be, but what additional security, beyond the security the plaintiff has already, will be necessary to equal that probable judgment. See *People's Bank* v. *Bilmor Building Corporation,* supra. A plaintiff is not required to exhaust the collateral securing a debt before it attempts to reach other assets of a defendant by way of attachment, but the collateral must be taken into account in establishing the amount of the attachment necessary as a supplement. *Bank of Boston Connecticut* v. *Schlesinger,* supra. Thus, a plaintiff may be entitled to a prejudgment remedy because it has demonstrated the requisite probable cause, but it may still be denied the remedy if its interest is already adequately secured. The plaintiff in this case does not argue that the amount of the bond was insufficient to cover his claim or that his claim is inadequately secured by the bond because other subcontractors had already exhausted or could exhaust the amount of the bond, so that he needs additional security as in *People's Bank* or *Schlesinger.* His argu-

ment is, rather, that he needs the simultaneous security of a prejudgment remedy because the bond may not be paid because of the possible precarious financial condition of Aetna.

The trial court did not consider whether the plaintiff had established probable cause to sustain the validity of the claim; it merely determined that the plaintiff was adequately protected by the performance bond, and thus denied the application for prejudgment attachment. We hold, as a matter of law, that a subcontractor protected by § 49-42 (a) is entitled, pursuant to General Statutes §§ 52-278c and 52-278d, to a probable cause hearing during which it may prove that there is probable cause to sustain the validity of its claim and probable cause to prove entitlement to security in addition to the bond provided by General Statutes § 49-42 (a).

In this case, however, even if the plaintiff could sustain the validity of its claim because it was owed sums by EI that were secured by the bond and because the "pay when paid" clause did not exonerate Aetna from paying the plaintiff, the plaintiff did not show or make an offer of proof that it needed additional security to safeguard its probable judgment. Because that is so, it would make no difference if the plaintiff could have sustained the validity of the debt owed to it by EI and the right to collect that amount from Aetna on the bond.

The judgment denying the application for a prejudgment remedy is affirmed.

In this opinion the other judges concurred.