[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION APPLICATION FOR PREJUDGMENT REMEDIES
CT Page 3017
After reviewing the application for prejudgment remedies dated September 6, 1996, with exhibits attached thereto; the oral testimony of Mr. Conroy at the hearing and the trial briefs of both parties, the court believes that the pertinent facts can be summarized as follows:
FACTS
Essentially, the pertinent facts are: The defendants (or either of them) owned 36 acres of land in Torrington (the "subject Premises") for which they had obtained various land use approvals permitting the development of a shopping center therein providing approximately 200,000 square feet of retail space. The defendants had at least two major obstacles impeding their proposed development of the subject premises. First, there were numerous administrative appeals taken by various parties contesting the use of the subject premises for commercial purposes (the "Zoning Appeals"). Secondly, the defendants had not been able to secure any major tenants for the proposed shopping center.
Pursuant to the Agreement of Purchase and Sale, the substituted plaintiff or an affiliate paid, or caused to be paid, carrying costs of the subject premises in the aggregate amount of $308,463.39, consisting of three categories: (1) Insurance premiums in the amount of $4,824; (2) real estate taxes in the amount of $26,723.03; and (3) mortgage interest in the amount of $276,919.36. Copies of documentation for said expenses were provided at the hearing. All of said expenditures were for the benefit of the defendants and the subject premises.
The Agreement of Purchase and Sale provides that the Buyer shall be responsible for the payment of the carrying costs of the premises for the period from July 1, 1991 until January 10, 1993; and that in the event of a termination of the Agreement, defendants shall refund to buyer the carrying costs. (admissions, par. 2; PJR Exhibit A, §§ 1.04, 4.02.
Sec. 2.03 Conditions Precedent to Purchase in the Agreement of Purchase and Sale provides, in relevant part: Buyer's obligation to purchase is contingent upon obtaining within the Pre-Development period any and all permits, licenses or authorizations from any local, county, state or other political CT Page 3018 subdivision or agency having jurisdiction over the premises necessary or appropriate for the consummation of the transactions contemplated under this Agreement, or for the construction of the project in accordance with the requirements of Buyer and it's [sic] prospective tenants, and resolving any litigation or other claims affecting the Premises or Project including, without limitation:
(a) Final and nonappealable insurance of zoning certificate and zoning approvals with respect to such matters as Buyer deems appropriate, . . .
(d) Building permits for construction of the Project according to plans and specifications reasonable satisfactory to Buyer;
(e) Satisfactory conclusion of any current litigation affecting the Premises or Project upon terms reasonably satisfactory to Buyer, (admissions, par. 3; PJR Exhibit A).
Section 4.01 of the Purchase and Sale Agreement stated that the Buyer shall have the right to terminate its obligation under this Agreement in any one or more of the following events:
"D. In the event that the zoning and other matters described in Section 2.03 (the Conditions Precedent) herein have not been resolved within the Pre-Development Period."
Section 4.02 of the Agreement stated "Seller shall, within thirty (30) days of Notice of Termination by Buyer based upon those conditions set forth in Section 4.01 above, refund to Buyer those payments of Carrying Costs of the Premises made during the Pre-Development Period pursuant to Section 1.04 of this Agreement.
In about March, 1987, a portion of the premises were re-zoned from residential to restricted commercial and industrial. (admissions, par. 4), and prior to February, 1992, the premises were the subject of numerous land use appeals brought by neighbors of the Premises contesting the use of said Premises for the desired commercial purposes, a summary of which litigation is stated in Zeller v. Consolini, 235 Conn. 417, 419, 667 A.2d 64
(1995). (admissions, par. 5).
In February, 1992, the neighbors filed an application with the Torrington Planning zoning Commission, seeking a zone CT Page 3019 change of the Premises, attempting to re-zone the premises from restricted commercial and industrial to "industrial park". From the denial of said application, those defendants appealed to the Superior Court for the Judicial District of Litchfield (the "zoning appeal"). (admissions, par. 6), and said Zoning appeal was pending in the Superior court as of February 23, 1993. (Admissions, par. 8) (transcript p. 20). The parties entered into an Extension Agreement dated February 10, 1993 whereby the PreDevelopment Period was extended for two weeks until January 25, 1993. (Admissions, par. 9; PJR Exhibit 3).
Section 2.04 of the Agreement of Purchase and Sale provides that the Buyer was obligated to close within thirty days after the expiration of the PreDevelopment Period. On February 23, 1993, Mr. Conroy sent a letter to the Defendants, a true and accurate copy of which was admitted as PJR Exhibit 4. among other things, the letter requested an extension of the Predevelopment Period for an additional period of one year in order to allow for the final disposition of the Zoning Appeal. The letter also states that in the event that the Defendants declined to agree to the terms of said letter, then the letter shall be treated as notification of termination under the terms of the Agreement. (Admissions, par. 10; PJR Exhibit 4).
The Defendants refused to agree to an extension of time of the Predevelopment Period of one year. (Admissions, par. 11). No closing was held and they have refused to return the carrying costs which were paid for their benefit. Mr. Conroy sent to the Defendants, and the Defendants received, a letter dated May 11, 1993, a true and accurate copy of which was admitted as PJR Exhibit 6. Among other things, said letter requested a refund of the Carrying Costs paid during the Predevelopment Period. (Admissions, par. 13. PJR Exhibit 6).
Prior to May 11, 1993, no building permit was issued for the improvements described in the Agreement which permit was a condition precedent to the Agreement, sec. 2.03, (Admissions, par. 15).
Despite representations by Defendants' counsel during the October 15, 1996 hearing that the Defendants had "several hours of evidence" in opposition to the Application, and despite the presence of the Defendant Mr. Zeller in the courtroom throughout the proceedings, the Defendants did not offer any rebuttal testimony or evidence whatsoever. CT Page 3020
PREJUDGMENT REMEDY STANDARD OF PROOF
The mechanism by which a Plaintiff can attach a defendant's assets prior to judgment is set forth in Connecticut General Statute Section 52-278. Since the operation of the prejudgment remedy, which was unknown at common law, may be harsh when applied to a defendant's property, it must be applied strictly within the limits set by statute. Blakeslee Arapaia Chapman, Inc.v. El Constructors, Inc., 32 Conn. App. 118, 125, 628 A.2d 601
(1993) quoting Ledgebrook Condominium Assn., Inc. v. LushCorporation, 172 Conn. 577, 582, 376 A.2d 60 (1977). Section52-278d provides the standard that a plaintiff who applies for a prejudgment remedy must meet.
 The hearing shall be limited to a determination of whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . If the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court.
Conn. Gen. Stat. Sec. 52-278d.
In 1993, the legislature amended the Pre-Judgment Remedy Statute and substituted "probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff" for the prior language "probable cause to sustain the validity of the plaintiff's claim." See P.A. 93-431. The standard, then, is whether there is probable cause that judgment will be rendered in favor of the plaintiff, taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance.
This court has recognized that this is a new standard which the plaintiff must meet. DeVito v. Rosenbaum, CV 87 0090149 S, CT Page 3021 Judicial District of Stamford/Norwalk at Stamford, 9 CSCR 408,1994 CT Casebase 3666 (April 5, 1994, Karazin, J.). This standard raised the burden of proof which plaintiff must meet in order to obtain a prejudgment remedy order. Boland v. GuntherInternational ltd., CV 94 0310792 1995 Casebase 2575 (March 9, 1995, Vertefeuille, J.) (Appendix 5).
Our Supreme Court has recognized that "[t]he court's role in such a hearing is to determine probable success by weighing probabilities," Bank of Boston v. Schlesinger, 220 Conn. 152,156, 595 A.2d 872 (1991) quoting New England Land Co. Ltd. v.DeMarkey, 213 Conn. 612, 620-21, 569 A.2d 1098 (1990).
In evaluating whether probable cause exists that a judgment will enter in favor of the plaintiff, the court must evaluate any defenses raised by the defendant. Haxhi v. Moss,25 Conn. App. 16, 591 A.2d 1275, 1277 (1991). "A good defense . . . will be enough to show that there is no `probable cause that judgment will be rendered in the matter in favor of the plaintiff.'" Haxhiv. Moss, 25 Conn. App. at 20, 591 A.2d at 1277 quoting Augeri v.C.F. Wooding Co., 173 Conn. 426, 429, 378 A.2d 538 (1977).
Therefore, it is not the mere subjective belief which the Plaintiff holds with regard to whether it has a valid claim. Rather, the standard requires the court to weigh the probabilities of the Plaintiff's claim as well as the defenses to determine whether a judgment will be rendered in the Plaintiff's favor.
The Defendants submitted that the evidence and argument offered at the hearing on the Plaintiff's Application For PreJudgment Remedies presented four issues about which this Court must decide. These issues were:
1. Whether the Substituted Plaintiff, Litchfield Place Associates, as the assignee of the Contract from the nominal Plaintiff, Conroy, can assert a claim for damages when this Court has held that Conroy lacked standing to assert any claims under the assigned Contract.
2. Whether Litchfield Place Associates established by the requisite proof that it suffered damages when it offered in support of its claim (1) amounts paid by Conroy, an entity which this Court has held could not bring an action against the Defendants, and (2) amounts paid by Litchfield Hills Associates, CT Page 3022 where Litchfield Hills Associates is not a party to this matter and no testimony was provided by the Plaintiff as to its basis for claiming such damages, and (3) amounts paid by Litchfield Place Associates before the date the Contract was assigned and before notice of assignment was given.
3. Whether Litchfield Place Associates established by the requisite proof that "any litigation affecting the Premises or Project" was not resolved as of February 23, 1993.
4. Whether Litchfield Place Associates established that it sent notice of termination to the Defendants by Conroy's letter dated February 23, 1993, and, if so, whether such notice was reasonably given, and further, whether such termination entitled the Defendants to retain the carrying costs as liquidated damages.
FINDINGS
Applying the legal standard that probable cause exists that a judgment will enter in favor of the plaintiff on the evidence introduced at this hearing, the court finds that the plaintiff has sustained its burden of proof. The court finds: that the plaintiff as an assignee of the contract can assert a claim for damages since Lewis, J., has already found that it has standing and Karazin, J., of this court has previously found that Litchfield Place Associates (Litchfield Place) was the "real party in interest". A real party in interest is one who has a real direct, actual, material, or substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the action. See Delio v. Earth Garden Florist, Inc.,28 Conn. App. 73, 78 (1992) (citations omitted). In determining the real party in interest courts must look beyond the nominal party whose name appears of record and consider the legal questions raised as they may affect the real party in interest." See alsoSadloski v. Town of Manchester, 228 Conn. 79, 84, 634 A.2d 888
(1993); Uniys Corp. v. Department of Labor, 220 Conn. 689, 693,600 A.2d 1019 (1991).
The court further finds that the substituted plaintiff has established sufficient proof that it suffered damages in support of its claims. In the Agreement the definition of "Buyer" includes the words "or an affiliate" of the Conroy Development Company and then in Sec. 6.07 it further states "that Buyer may CT Page 3023 assign or transfer its rights and this agreement to any affiliated entity or to any trust, siblings, spouse, children or grandchildren of the parties hereto or of the principal thereof.
While the substituted plaintiff has offered a compilation of expenses incurred by three different entities, the evidence introduced at that hearing indicates that they are all affiliated with each other. The evidence establishes an amount certain was paid to the defendants who never refused to accept the method of payment or requested payment by a specific affiliate. The uncontradicted proof was that $308,463.39 was paid or caused to be paid under the agreement as carrying costs.
The court further finds that "litigation affecting the premises or project" was not resolved during the extended Pre Development Period and that Mr. Conroy's letter dated February 23, 1993 gave reasonable notice of termination.
Although the court has reviewed the special defense and counterclaim filed by the defendants and considered the arguments, (thereon contained in the defendant's brief,) the court cannot find them to be controlling. At the hearing, the defendants did not offer any evidence and Mr. Zeller who was present in the courtroom during the entire hearing was not called as a witness to refute any of the plaintiff's proof.
A prejudgment attachment on real property of the defendants may enter in the amount of $308,000. At this time the court cannot find that the detention of the money owed was wrongful and therefore no prejudgment interest is allowed.
RYAN, J.