[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO DISMISS APPLICATION FOR PREJUDGMENT REMEDY
On or about March 7, 1997, the plaintiff., Winchester Board of Education commenced an action in this court against the defendant, The W.L. Gilbert School Corporation, seeking a declaratory judgment determining that "state law, including Connecticut General Statute § 10-34, does not give the defendant the authority to unilaterally establish a line item in CT Page 9245 the plaintiff's budget, i.e. the amount of monies paid by the plaintiff to the defendant." On or about April 25, 1997, the defendant filed a motion to dismiss the complaint, which was denied by this court on June 30, 1997. On July 15, 1997, the defendant filed an answer to the plaintiff's complaint, the defendant also filed a counter claim, containing four counts. The first count seeks a declaratory judgment, vis-a-vis an issue contained in the plaintiff's complaint for declaratory judgment. Count Two alleges a claim of unjust enrichment in that the Winchester Board of Education has "only" paid 3 million dollars for such services, as opposed to the 3.1 million dollars that the defendant has unilaterally set as the amount due for such services in the absence of a contract. Count Three alleges a breach of an implied/oral contract by the Winchester Board of Education, through its failure to pay the full amount as described above that was unilaterally established by the defendant in the absence of a contract. Count Four alleges a claim of quantum meruit, namely, that the Winchester Board of Education has failed to pay for the "full" value of the educational services rendered to it by The Gilbert School and that The Gilbert School provided these services with the indication that it would be paid in "full".
The defendant has applied to this court for a pre-judgment remedy, claiming that there is probable cause that judgment will be rendered in favor of the defendant on its counter claims. The defendant seeks an order from this court directing the attachment of sufficient property of the plaintiff, Winchester Board of Education to secure judgment in the amount of $163,000. The plaintiff has responded in opposition to this application, asserting that: (1) the defendant may not obtain an attachment of property of a municipal corporation such as the Winchester Board of Education; (2) in addition, the plaintiff does not own real or personal property subject to attachment; see Conn. Gen. Stat. § 10-220; § 10-240, § 10-241; (3) the plaintiff has also asserted valid defenses to the defendant's counter claim; and (4) a pre-judgment remedy of attachment is unnecessary where the defendant has not shown that it needs additional security to safeguard its "probable judgment" or that its interest is not already adequately secured. See BlakesleeArpaia Chapman v. EI Constructors, 32 Conn. App. 118, 131,628 A.2d 601 (1993).
I
CT Page 9246
In its application for pre-judgment remedy, the defendant seeks an attachment on the plaintiff's property sufficient to secure a judgment in the amount of $163,000. While there have been no reported cases in Connecticut specifically dealing with the issue of a pre-judgment remedy or attachment of a municipal corporation's property[1], at least one superior court has held that a prejudgment remedy of attachment does not exist against a municipal corporation. Chilson v. Town of Watertown,
1 CONN. L. RPTR. 810, 1990 WL 283983 (Conn.Super.Ct. 1990). InChilson, a creditor sought to attach a town's property to secure a potential judgment of $1.5 million. While noting that the courts may garnish monies owed by a town to a third party judgment debtor; see Footnote 1, supra; the court stated the following:
 To us, it is significant that [creditor] CEI does not seek to garnish a debt owed by the Town to a third party, but rather if successful after hearing, would have us invade the Town treasury, held by its agent, the bank, an order held as security for [creditor] CEI's claim $1,500,000, which would otherwise be used to run the municipal government in Watertown. The parties in their well-written briefs note that there is no explicit law authorizing this application. While our law gives us rather broad discretionary authority over attachments involving a governmental unit, [see Conn. Gen. Stat. § 52-279] we think the application here invites us to interfere in governmental operations which are cloaked with sovereignty. Prudential Mortgage Investment Company v. New Britain, 123 Conn. 390, 394 (1937). Without a clear statutory signal from the General Assembly to entertain the application, silence, on our existing statutory framework, ought not to be considered by us as a basis for jurisdiction. National Fire Proofing Company v. Huntington, 81 Conn. 632, 633-34 (1909); 17 McQuillen, The Law of Municipal Corporations, § 49-86 at 355 (3rd edition).
Chilson v. Watertown, supra. The court held that it was without jurisdiction and dismissed the application for pre-judgment remedy. Id. The court's ruling in Chilson is consistent with the CT Page 9247 rulings in other jurisdictions, where the courts have held that property of a municipal corporation generally is not subject to attachment unless specifically permitted by statute. Chewing v.District of Columbia, 119 F.2d 459, 460 (D.C. Cir. 1941);Merritt-Chapman Scott v. Public Utility District No. 2 of GrantCounty, 207 F. Sup. 443, 445 (S.D.N.Y. 1962); City of RooseveltPark v. Norton Township, 330 Mich. 270, 47 N.W.2d 605, 606
(1951), citing 89 ALR 864 ("the courts are practically unanimous in holding that the funds or credits of a municipality or other public body exercising governmental functions, acquired by it in its governmental capacity, may not be reached by its creditors by execution under a judgment against the municipality."). See also 30 Am.Jur.2d, Executions § 667, p. 44. Cf. Commonwealth v.Mooney, 172 Pa. Super, 30, 92 A.2d 258 (1952). Such an attachment is forbidden due to the special nature of public property, which is used for public purpose, and so as to prevent any unfortunate curtailment of governmental activities. Merritt-Chapman Scott v. Public Utility District No. 21, supra; City ofRoosevelt Park v. Norton Township, supra.
The Connecticut courts have recognized the special nature of public property by prohibiting other legal infringements upon such property. The Connecticut Supreme Court has held that mechanic liens cannot be established against land belonging to the state or to a municipal corporation. Fenton v. FentonBuilding Company, 90 Conn. 7, 96 A. 145 (1515); National FireProofing Company v. Town of Huntington, 81 Conn. 632, 633,71 A. 911 (1909). In rejecting the imposition of a mechanic's lien on a public school building, the Supreme Court stated:
 The original contractor for the erection of a public building for such a public corporation as has been described is always sure of his pay. His debtor commands the resources to the whole community. As no lien is necessary for his protection, it is not to be presumed, in view of what such a lien would put in his power to do, that the General Assembly intended to give him one. The possessor of a mechanic's lien on real estate can gain title to it by foreclosure. Such a lien can be imposed upon by public buildings, they can thus be turned into private buildings. If it can attach to a school house, it is difficult to see why it could not equally attach to a CT Page 9248 city hall, a county courthouse, or a county jail. It would be intolerable to put it in the power of a private citizen in case the negligence of a county should result in the foreclosure of mechanic's lien, to take possession of a courthouse, and turn out the courts, or of a jail, and turn out of the prisoners.
National Fire Proofing Company v. Town of Huntington, supra. See also 51 Am.Jur.2d, Liens § 18 ("the granting of liens on public property is against public policy and, in fact, is forbidden").
In this case, an attachment on any property owned by the Winchester Board of Education is likewise inappropriate. An attachment, like a mechanic's lien, would give the applicant the power to execute on such attachment and, if necessary, to foreclose in order to collect any judgment. An attachment, like a mechanic's lien, would be an improper infringement upon the public's property that is owned by a municipal corporation; in effect, The Gilbert School would be given the power to take possession of the public school buildings and other property, a possibility that was rejected as unreasonable in National FireProofing Company v. Town of Huntington, supra. In addition to the possible disruption of the public property, the public treasury, and the public's business, such a prejudgment remedy is unnecessary in light of the security that the alleged "creditor", Gilbert should receive from the fact that its debtor "commands the resources of the entire community." National Fire ProofingCompany v. Town of Huntington, supra.[2] Accordingly, since a party may not secure an attachment on prejudgment remedy against a municipal corporation, this court is without jurisdiction over the defendant's application.
 II
Assuming arguendo that there was not a per se bar to the attachment of a municipal corporation's property, the attachment sought against the Winchester Board of Education is still inappropriate, since under Connecticut law, the Board of Education does not own "school" property; rather the Town of Winchester owns such property. CT Page 9249
Under Conn. Gen. Stat. § 10-220 (a), a board of education is empowered with the "care, maintenance and operations of the buildings, lands, apparatus and other property used for school purposes." See also Board of Education of New Haven v. City ofNew Haven, 237 Conn. 169, 176, 676 A.2d 375 (1996). A board of education, however, is not explicitly empowered to own or convey property, whether it be real or personal property. Indeed, under General Statutes § 10-241 "each school district shall have the power to . . . purchase, receive, hold and convey real and personal property for school purposes." (Emphasis added.) Under General Statutes § 10-240, it is the town, not the board of education, that is the "school district." The Connecticut Supreme Court has confirmed the fact that it is the town, not the board of education, that owns property used for school purposes.Richards v. Planning Zoning Commission of Wilton,170 Conn. 318, 365 A.2d 1130 (1976). The Court held that with school facilities and real property, "legal title is held by the town. In as much as a special permit to use the property for school purposes was granted . . ., it is apparent that the town holds the property in its capacity as a school district. General Statutes § 10-241." Richards v. Planning Zoning Commission of Wilson, supra. The Supreme Court then noted that boards of education have "substantial" powers with respect to property committed to school purposes, namely, "the care, maintenance, and operation of buildings, lands, apparatus and other property used for school purposes", as provided under Conn. Gen. Stat. § 10-220 (a). Richards v. Planning ZoningCommission of Wilton, supra. However, these substantial powers do not include the power to hold or convey, i.e., ownership; such powers can be more appropriately described as mere stewardship.[3]
In the instant case, this distinction between the town's ownership and the board of education's stewardship of property used for school purposes, as exemplified by the dichotomy between Conn. Gen. Stat. § 10-220 and § 10-241, prevents the granting of the defendant's application for an order of attachment. The defendant seeks to attach sufficient property of the Winchester Board of Education to secure a judgment on defendant's counter claims. According to Connecticut's pre-judgment remedy statutes, a pre-judgment remedy is defined as a remedy "that enables a person to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of his property prior to final judgment. . . ." Conn. CT Page 9250 Gen. Stat. § 52-278a (d) (emphasis added). In addition, under C.G.S. § 52-279 "attachments may be granted upon all complaints containing a money demand against the estate of the defendant, both real and personal." However, as a matter of law, the plaintiff does not own any such property; while it has substantial rights and privileges as to property used for school privileges, it is the Town of Winchester who owns such property and has the ultimate power to sell and dispose of such property.Richards v. Planning Zoning Commission of Wilton, supra. Compare Conn. Gen. Stat. § 10-220 with § 10-241; see also 22 Op. Atty. Gen. at 443. Accordingly, the remedy of attachment is unavailable in the instant case, since the plaintiff does not own any property that could secure such a judgment.
The defendant claims that it does not wish to attach real estate but rather obtain a pre-judgment attachment on funds held by the plaintiff. The relevant law is contained in General Statutes §§ 7-344, 10-222, and 7-7. The plaintiff has alleged in paragraph 11 of its amended complaint that
 11. The monies paid by the plaintiff to the defendant for the operating costs of The Gilbert School constitute a line item in the plaintiff's budget. The plaintiff's budget is submitted to and is subject to review by the Town of Winchester via its legislative body; Connecticut General Statutes, § 7-344 and § 10-222; and is subject to further review by the Town's electors via the referendum process, Connecticut General Statutes, § 7-7. Pursuant to the Town budget process and the aforementioned statutes, the Town of Winchester and its electors have the authority to reduce, and in practice have reduced, the educational budget that is submitted to the Town by the plaintiff. . . .
The pertinent statutes provide in part as follows:
 Sec. 7-344. Appropriations. Laying of tax. Not less than two weeks before the annual town meeting, the board shall hold a public hearing, at which itemized estimates of the expenditures of the town for the ensuing fiscal year shall be presented and at which CT Page 9251 all persons shall be heard in regard to any appropriation which they are desirous that the board should recommend or reject. The board shall, after such public hearing, hold a public meeting at which it shall consider the estimates so presented and any other matters brought to its attention and shall thereupon prepare and cause to be published in a newspaper in such town, if any, otherwise in a newspaper having a substantial circulation in such town, a report in a form prescribed by the Secretary of the Office of Policy and Management containing: (1) an itemized statement of all actual receipts from all sources of such town during its last fiscal year; . . . (3) an itemized estimate of anticipated revenues during the ensuing fiscal year from each source other than from local property taxes and an estimate of the amount which should be raised by local property taxation for such ensuing fiscal year; (4) an itemized estimate of expenditures of such town for such ensuing fiscal year; and (5) the amount of revenue surplus or deficit of the town at the beginning of the fiscal year for which estimates are being prepared; The board shall submit such estimate with its recommendations to the annual town meeting next ensuing, and such meeting shall take action upon such estimate and recommendations, and make such specific appropriations as appear advisable, but no appropriation shall be made exceeding in amount that for the same purpose recommended by the board and no appropriation shall be made for any purpose not recommended by the board. Such estimate and recommendations may include, if submitted to a vote by voting machine, questions to indicate whether the budget is too high or too low. The vote on such questions shall be for advisory purposes only, and not binding upon the board. . . .(emphasis added)
 Sec. 10-222. Appropriations and budget. Financial information system. (a) Each local board of education shall prepare an itemized CT Page 9252 estimate of the cost of maintenance of public schools for the ensuing year and shall submit such estimate to the board of finance in each town having no board of finance or otherwise to the authority making appropriations for the school district, not later than two months preceding the annual meeting at which appropriations are to be made. The money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education. Any such board may transfer any unexpended or uncontracted-for portion of any appropriation for school purposes to any other item of such itemized estimate. Expenditures by the board of education shall not exceed the appropriation made by the municipality, with such money as may bed received from other sources for school purposes. If any occasion arises whereby additional funds are needed by such board, the chairman of such board shall notify the board of finance, board of selectmen or appropriating authority, as the case may bed, and shall submit a request for additional funds in the same manner as is provided for departments, boards or agencies of the municipality and no additional funds shall bed expended unless such supplemental appropriation shall bed granted and no supplemental expenditures shall bed made in excess of those granted through the appropriating authority. The annual report of the board of education shall, in accordance with section 10-224, include a summary showing (1) the total cost of the maintenance of schools; (2) the amount received from the state and other sources for the maintenance of schools, and (3) the net cost to the municipality of the maintenance of schools.
As stated in Fowler v. Enfield, 138 Conn. 521
at 529:
 A town board of education is a creature of statute. The pertinent provisions as to its fiscal duties and powers are found in CT Page 9253 § 1480 of the General Statutes. After providing for the preparation by it of an annual estimate of the cost of maintaining the public schools and for the submission thereof to the board of finance, the statute specifies that the money appropriated by the town "for the maintenance of public schools shall bed expended by and in the discretion of the board of education." Then, after providing for the transferring of unexpended balances, it continues: "Expenditures by the board of education in each . . . town . . . shall not exceed the appropriation made by the . . . town . . ., with such money as may bed received from other sources for school purposes." The town board of finance is likewise a creature of statute. Section 777 of the General Statutes, after setting forth the duties of the board of finance as to the preparation and publication prior to the annual town meeting of the prescribed statements of the town's finances, requires that it shall submit an estimate of expenditures for the ensuing fiscal year with its recommendations to the town meeting, which shall act thereon "and make such specific appropriations as may appear advisable, but no appropriation shall bed made exceeding in amount that for the same purpose recommended by the board." Section 780, insofar as applicable to the situation in this case, states: "No officer of such town shall expend or enter into any contract by which the town shall become liable for any sum which, with any contract then in force, shall exceed the appropriation for the department. . . ." It further provides that, should occasion arise whereby more money is needed by a department in an amount in excess of $500, the necessary appropriation "shall not bed made until, upon the recommendation of the board [of finance], the same shall have been voted by the town at a meeting called for such purpose.". . . .
It is clear from the general statutes and Fowler v. Enfield,supra, "that no appropriation shall bed made exceeding in amount CT Page 9254 that for the same purpose recommended by the board . . ." Accordingly, the plaintiff has no authority to authorize a payment not approved by the board and therefore there is no basis for a prejudgment attachment.
For the reasons set forth, the motion to dismiss the application for a prejudgment remedy is granted.
HON. WALTER M. PICKETT, JR. State Judge Referee