[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION FOR PREJUDGMENT REMEDY
The plaintiff succeeded another financial institution as the source of financing for an Isuzu automobile agency operated by the defendant Grossman in Old Saybrook, Connecticut.
The remaining defendants are principals and/or guarantors on the financing agreement sued on by the plaintiff.
Though the defendants have defended against this application with vigor, there appears to be no question that the agency owes the plaintiff $278,000 on checks returned for insufficient funds. Nor is there any doubt that the agency operated "out of trust" for at least two or three months before the plaintiff repossessed what was left of its inventory. In fact, the defendant Joseph Salinardi, who operated the agency, admitted these facts and stated he doesn't dispute the plaintiffs figure of the outstanding balance.
The court heard the testimony of two witnesses from the plaintiff bank. One, Michael McKiernan, conducted the field CT Page 15819 audits of cars at the agency premises and compiled much of the data appearing on the schedules of cars sold, out of trust, and missing. He was obviously knowledgeable in the automobile financing field and the court was impressed with his recitation of how his material was collected and verified.
Laurence Rocker, a bank officer, testified largely from his own knowledge of the defendants' account and from bank records he worked with and some of which he prepared. Though repeatedly attacked for alleged errors and omissions, the court credits his testimony as truthful, complete and accurate.
The defendants made much of a claim that the plaintiff was "over secured." One issue involved the residence of the Salinardi's, on which the federal government has lodged liens totaling over a million dollars. The Salinardis argue that this should be ignored by the plaintiff as the claim is against Mr. Salinardi and Mrs. Salinardi owns the property. The court has doubts about the wisdom of such an approach in dealing with the internal revenue service in a back tax dispute.
Equally unpersuasive is the argument that the plaintiff has other significant security at the abandoned agency premises in the form of office furniture and equipment and the contents of the parts department. All of this personalty is presently under the control of the agency's former landlord and the plaintiff has not had it appraised. In this court's trial experience, office furniture and furnishings are usually of dubious value, except to the user, and there is a market glut of such items. The court questions the popularity of a stock of Isuzu motor parts of unknown age, condition and content.
If this property is so valuable as to be of some significance in this proceeding, Mr. Salinardi could have taken the stand to state what was there and what he felt it was worth.
It must also be noted that the defendants did not effect a surrender of this secured property when the plaintiff made demand upon them, pursuant to the financing agreement.
The defendants also argue that further "over security" is available to the plaintiff in the form of the new and used cars which have been re-possessed by the plaintiff.
The court heard Mr. Rocker explain the process by which the CT Page 15820 plaintiff arrived at the net balance it claims is due from the defendants. He explained the trade practices, the source of the values assigned to the cars, and the efforts made to get the manufacturer to re-purchase the new vehicles.
Though suggesting the plaintiff should protect these defendants by selling cars at retail to obtain higher prices and criticizing the plaintiffs repossession method and selection of sales auctioneer, the defendants have presented no evidence to indicate the plaintiff is acting contrary to law or to the financing agreement.
The defendants rely on Blakeslee Arpaia Chapman. Inc. v. EIConstructors, Inc., 32 Conn. App. 118 (1993) to support their claim. At page 131, the court states:
 "Thus, a plaintiff may be entitled to a prejudgment remedy because it has demonstrated the requisite probable cause, but it may still be denied the remedy if its interest is already adequately secured."
The defendants' reliance on this case is misplaced, because the plaintiff has demonstrated to the court the validity of its claim, the reasonableness of its actions against the defendants, and the weakness of the so called "security."
The quotation recited above is preceded by this language:
 "In cases where some security exists for the payment of the debt, however, as m mortgage foreclosure actions, the question for a trial court is enlarged. In such cases, the court not only must determine what the amount of the judgment will probably be, but what additional security, beyond the security the plaintiff has already, will be necessary to equal that probable judgment. See People's Bank v. Bilmor Building Corporation, supra. A plaintiff is not required to exhaust the collateral securing a debt before it attempts to reach other assets of a defendant by way of attachment, but the collateral must be taken into account in establishing the amount of the attachment necessary as a supplement." Id., at 131. Underlining added.
This plaintiff is faced with the prospect of incurring a huge loss, largely as a result of the defendants converting to their own use the proceeds of sales of vehicles on which it assumed its lien would be honored. A substantial portion of the claim is the CT Page 15821 result of the defendants passing bad checks to the plaintiff.
This obligation, even if reduced by subsequent credits from sales, is accruing interest charges. If the defendants' tactics prior to and in the course of this procedure can be assumed to reflect its future actions, the plaintiff will incur substantial expense for counsel fees and collection costs.
It is therefore the conclusion of the court that the plaintiffs application for a prejudgment should be granted and it is so ordered. Further, the order entered by Judge Pittman is to remain in full force and effect till further order of court.
Anthony DeMayo Judge Trial Referee
After this decision was written, the court was advised that the parties had filed briefs, though none had been ordered nor scheduled. The court has considered those briefs in rendering the decision above.