[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISCHARGE LIEN
The defendants in this action to foreclose a mechanic's lien, John Varga and American Home Mortgage, have moved pursuant to General Statutes § 49-35a (c)[1] for this court to discharge the lien. For the reasons stated below, the motion is denied.
Plaintiff Santa Fuel filed a mechanic's lien to secure payment for services it performed in connection with the removal of an underground oil storage tank and the remediation of an environmental problem at 171 Lloyd Drive in Fairfield. At the time Santa Fuel performed the services, the property was owned by Joseph W. Farrace, whose financial affairs were being handled by his daughter, Jacquelyn Skultety. Sometime after the work was done, the property was sold to defendant John Varga, who granted a mortgage to defendant American Home Mortgage. Varga purchased the home and American Home Mortgage accepted the mortgage with knowledge of the lien.[2]
Varga and America Home Mortgage filed the motion to discharge the mechanic's lien in October of 2000. The court (Brennan, J.) conducted an evidentiary hearing with respect to the motion and thereafter resolved various issues. The defendants now want this court to resolve two issues that were previously raised by the defendants but not resolved: (1) whether the owner of the property or someone authorized by the owner agreed to the services for which the plaintiff seeks compensation; (2) whether a price list agreement, which is dated January 20, 1999, was subject to the requirements of the Home Improvement Act, General Statutes §§ 20-418 et seq. or the Home Solicitation Sales Act, General Statutes §§ 42-134 et seq.
The standards that this court must follow in deciding the motion to discharge the lien are set forth in General Statutes § 49-35b. "[The lienor shall first be required to establish that there is probable cause to sustain the validity of his lien. . . . Upon consideration of the facts CT Page 1735 before it, the court or judge may: (1) Deny the application or motion if probable cause to sustain the validity of the lien is established; or (2) order the lien discharged if (A) probable cause to sustain its validity is not established, or (B) by clear and convincing evidence its invalidity is established. . . ." "The hearing in probable cause . . . is not contemplated to be a full scale trial on the merits of the plaintiff's claim. The plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim. . . . The court's role in such a hearing is to determine probable success by weighing probabilities. Moreover, this weighing process applies to both legal and factual issues. . . . It is the trial court that must determine, in light of its assessment of the legal issues and the credibility of the witnesses, whether a plaintiff has sustained the burden of showing probable cause to sustain the validity of its claim." (Citations omitted.) Blakeslee Arpaia Chapman v. El Constructors,32 Conn. App. 118, 126, 628 A.2d 601 (1993).
The evidence presented to this court shows the following: In order to conduct her father's affairs, Jacquelyn Skultety held a power of attorney, Exhibit 5[3], that had been executed by her father, Joseph Farrace. In order to make her father's house marketable, she requested Santa Fuel to remove an old oil storage tank that was buried underground. Santa Fuel had been providing fuel and maintenance service to her father for a number of years. On July 15, 1999, Jacquelyn Skultety signed an agreement with Santa Fuel for the removal of the oil tank. See Exhibits 1 and B. This agreement was signed by a representative of Santa Fuel on January 6, 1999, and given to Jacquelyn Skultety shortly thereafter. An addendum to the agreement, which was also signed by Jacquelyn Skultety on July 15, 1999, contains the following paragraph:
Addendum to installation contract.
 Removal and disposal of contaminated fill if encountered shall constitute an extra charge. If after the tank has been removed and it is determined that an environmental problem exists, such as contaminated soil, oil or gasoline is in the grave, the cost to remediate the environmental problem will be considered an extra charge.
Santa Fuel began work on January 20, 1999. After the tank was removed, the soil was found to be contaminated. On January 20, 1999, Jacquelyn Skultety's husband, Alex Skultety, signed as "buyer" a document wherein Santa Fuel proposed to furnish the materials and labor that were made necessary due to the tank "being a leaker"at prices set forth in the document. See Exhibit 2. The remediation work was done on January 25, CT Page 1736 27, 28, 29, and February 1, 1999. See Exhibit 4. Jacquelyn Skultety was aware that the remediation work was being done.
The owner of Santa Fuel as well as a manager and other persons employed by the company held current and unlimited contractor licenses for heating, cooling, piping, and plumbing work. Two of their license numbers are set forth on the first page of the agreement that Jacquelyn Skultety signed on January 15, 1999. The licenses were issued pursuant to Chapter 393 of the General Statutes. The work that Santa Fuel performed was of the kind that holders of such licenses are authorized to perform. The person who supervised the excavation work at the Farrace residence did not possess a professional license. Several employees who worked on the premises possessed limited heating and plumbing licences.
The charges for the remediation work and materials amount to $16,639.50. There is a balance of $17,968.00 due Santa Fuel for the tank removal and remediation work. See Exhibit 6.
The defendants first claim that the lien should be discharged on the ground the plaintiff has failed to show that either Mr. Farrace or someone authorized by him agreed to the services and materials for which the plaintiff seeks compensation. Based on the above factual recitation, the court concludes that the plaintiff has shown that Jacquelyn Skultety was authorized by her father to agree to the tank removal and subsequent remediation work and that she did agree with the plaintiff for the performance of all the work that was done.
The defendants' next claim is that work was done in violation of the Home Improvement Act. The plaintiff, on the other hand, contends that a statutory exemption applies. Section 20-428 of the Act provides as follows: "This chapter shall not apply to any of the following persons or organizations . . . (4) any person holding a current professional or occupational license issued pursuant to the general statutes, provided such person engages only in that work for which the license is issued." This court concludes that the plaintiff has shown a licensed contractor was responsible for the performance of the work that was done on the Farrace property. Accordingly, the statutory exemption applies and there was no violation of the Home Improvement Act.
The defendants' final claim is that the work was done in violation of the Home Sales Solicitation Act. The plaintiff contends that the labor and services it provided are exempt from this act by reason of the statutory definition of the term "home solicitation sale." Section 42-134a
of the act provides as follows:
"The term `home solicitation sale' does not include a CT Page 1737 transaction. . . . (4) in which the buyer has initiated the contact and specifically requested the seller to visit his home for the purpose of repairing or performing maintenance upon the buyer's personal property. If in the course of such visit, the seller sells the buyer the right to receive additional services or goods other than replacement parts necessarily used in performing the maintenance or in making the repairs, the sale of those additional goods or services shall not come within the exclusion."
The court finds that the agreement that Jacquelyn Skultety signed on January 15, 1999, was a transaction that falls within this exclusion. The court further finds, based on the language of that agreement, that the remediation work, which followed the removal of the tank, was included within the scope of the work that the plaintiff and Jacquelyn Skultety contemplated the agreement would cover.
During the hearing, Alex Skultety asserted that when he signed the price list for labor and materials on January 20, 1999, he had no other choice but to do so since the oil tank had already been lifted out of the ground. The fact that Alex Skultety rather than Jacquelyn Skultety signed the price list, and did so under duress, does not invalidate the lien but may leave open the issue whether the defendants will be bound at trial by the price schedule. In the absence of any contradictory evidence, this court finds that the charges for the services and materials are fair charges.
Based on the foregoing, the court concludes that the plaintiff has met its burden of establishing probable cause to sustain the validity of the lien and probable cause to secure a claim for $17,968.00. The defendant has not shown the lien to be invalid.
THIM, J.